**CUPEY BAJO NURSING HOME, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 685–89C.

United States Claims Court.

June 19, 1991.

Bamily Lopez Ortiz, Hato Rey, Puerto Rico, for plaintiff.

William K. Olivier, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## OPINION

REGINALD W. GIBSON, Judge.

In this contract case, plaintiff, Cupey Bajo Nursing Home, Inc. (Cupey Bajo), seeks to recover $169,905 for an alleged underpayment on a cost-reimbursement contract that it executed with the Veterans Administration (VA or defendant) for hospital services provided to veterans. Thereunder Cupey Bajo was to provide psychiatric care and other treatment for veterans at its inpatient facility in Rio Pedras, Puerto Rico. The VA argues, however, that Cupey Bajo was not underpaid, but rather, that it actually received $239,730 more than it was entitled to collect under the contract, a "swing" totalling $409,635. Jurisdiction is premised in this court on 28 U.S.C. § 1491.

With respect to the procedural posture of this case, Cupey Bajo alleges, in substance, that it filed a properly certified claim with the contracting officer (CO) for the $169,-905 underpayment pursuant to 41 U.S.C. § 605(c)(1) of the Contract Disputes Act (CDA), and that it also filed an appropriate and timely complaint in the Claims Court as required by the direct access provision contained in 41 U.S.C. § 609(a) of the CDA. In response, the defendant has filed a RUSCC 12(b)(1) motion to dismiss for lack of jurisdiction contending that (i) Cupey Bajo failed to submit a properly certified claim requesting the $169,905 underpayment, and (ii) moreover, it failed to present any claim whatsoever challenging the $239,730 alleged overpayment assessment by the VA.

For the reasons set forth hereinafter, we find that Cupey Bajo failed to file a properly certified CDA claim, as required, for the alleged $169,905 underpayment, and that this claim must, of course, be dismissed. However, inasmuch as Cupey Bajo was not statutorily required to file a certified claim before contesting the $239,730 overpayment demand by the VA in the Claims Court, this aspect of the complaint cannot be dismissed. Moreover, we find that we have the jurisdiction to decide the merits of that assessment even though there is no valid certified claim for money damages pending before the Claims Court. Thus, the RUSCC 12(b)(1) motion to dismiss is GRANTED IN PART and DENIED IN PART.

## FACTS

On April 1, 1982, Cupey Bajo and the VA executed contract No. V 455P–1531, which commenced on January 1, 1983, and expired on November 22, 1983. In substance, it obligated Cupey Bajo to provide psychiatric and other medical care for veterans being treated at its inpatient facility in Rio Pedras, Puerto Rico. The amount of contract payments to plaintiff were estab-

lished by multiplying the number of inpatient service days provided to such veterans by Cupey Bajo under the contract by a set "per diem rate" for reimbursable expenses. To obtain these periodic payments, Cupey Bajo filed monthly invoices detailing the number of days of inpatient care provided to VA beneficiaries and the amount due according to the contract per diem rate. This per diem rate was calculated by ascertaining the total allowable costs for hospital inpatient services and dividing that amount by the total number of inpatient days to obtain the average computed per diem reimbursable cost.

Naturally, the parties could not compute the per diem rate with precision when the contract was originally executed, so they used an estimated per diem rate of $65.93, which was subject to adjustment at the conclusion of the contract term. Thus, upon termination of the contract, the VA was authorized to conduct an audit to determine, first, the number of days of inpatient care actually provided for veterans, and secondly, the actual per diem rate as reflected by the total number of inpatient hospital service days provided and the reimbursable costs actually incurred by Cupey Bajo during the contract term. The actual per diem rate was required to be based on the results of this audit, and, along with the number of inpatient service days truly provided to the veterans, would be the basis for calculating the final amount due to or from Cupey Bajo.

In addition to providing for a confirming VA audit, the contract also called on Cupey Bajo to submit a statement with certified costs and its own calculations of the actual per diem rate. Thus, approximately one year after the expiration date of the contract, the VA provided Cupey Bajo with Form JHF–001. This document, captioned "Hospital Statement of Reimbursable Cost" (the Statement), required Cupey Bajo to furnish certain relevant cost data relating to the total allowable costs for hospital inpatient services, and the total number of hospital service days provided to all patients during the contract term. Mr. Oyola, the hospital administrator acting for Cupey Bajo, completed the Statement on or about October 23, 1984. In determining that the actual per diem rate for the contract period was $72.95, he divided the total reimbursable costs ($3,188,443) by the total number of inpatient days (43,705) that he recorded on the Statement. In other words, he calculated that the actual per diem was $7.02 higher than the $65.93 estimated inpatient per diem rate that the VA actually paid to Cupey Bajo under the original contract terms.

The VA did not immediately respond to the October 23, 1984 Statement by plaintiff. In fact, no further action was taken by either party for two and one-half years. Finally, sometime in the late spring of 1987, the CO apparently instructed Cupey Bajo to submit a claim for any additional amounts that might be due under the contract. Thus, on June 8, 1987, Mr. Oyola forwarded a letter to the CO which stated that Cupey Bajo was owed another $169,905 by the VA. He calculated this amount by multiplying the $7.02 difference between the $65.93 estimated and the $72.95 actual per diem rates by 24,203, the number of inpatient service days allegedly provided by Cupey Bajo under the contract. Mr. Oyola justified his use of the $7.02 per diem rate by attaching a copy of the October 23, 1984 Cupey Bajo per diem calculations. However, he provided no underlying supporting evidence for his claim that Cupey Bajo provided a total of 24,203 days of inpatient service care for VA veterans.

Ultimately, the VA responded to this submission in September of 1987, when it attempted to verify the actual per diem rate by conducting his own audit of the Cupey Bajo operation, as provided under the contract. When that audit was completed, it identified a number of alleged deficiencies. With respect to the amount of the actual per diem rate, it averred that Cupey Bajo understated the total number of hospital inpatient days and overstated the amount of reimbursable expenses incurred during the contract term, resulting in an actual inflated per diem rate calculation. Therefore, using the data obtained in the course of its audit, the VA determined that the actual per diem rate was $56.65, or

*$9.28* lower than the $65.93 estimated cost and $16.30 lower than the $72.95 actual per diem rate calculated by Cupey Bajo. Moreover, the VA audit contends that Cupey Bajo also overstated the number of days of inpatient care provided to VA beneficiaries by 267 days. That is, the VA audit allegedly showed that Cupey Bajo furnished only 23,936 days of VA inpatient hospital service, as opposed to the 24,203 days alleged by Mr. Oyola in his June 8, 1987 letter.

Consequently, after multiplying $9.28, the difference between its calculations regarding the actual per diem rate ($56.65) and the estimated rate ($65.93) in the contract, by 23,936 days, the number of VA inpatient hospital days actually provided, the VA determined that Cupey Bajo was overpaid by $222,126. In addition, because Cupey Bajo was paid for 267 days of inpatient care that it allegedly did not provide at the $65.93 estimated rate, the CO calculated that Cupey Bajo was overpaid by an additional $17,603. Adding these two items together, the VA concluded that Cupey Bajo collected a total of $239,730 to which it was not entitled under the contract. Cupey Bajo was informed by the CO of the audit results, and by letter dated April 14, 1988, it was advised that the VA did not owe the alleged additional $169,905, but rather it had been overpaid in the aggregate amount of $239,730.

Of course, Cupey Bajo disputed the alleged $239,730 overpayment, first in a meeting with the CO on August 10, 1988, and later in a letter on September 1, 1988. These objections were unavailing, and on December 21, 1988, the CO issued a final decision rejecting the alleged $169,905 underpayment claim. Subsequently, a Collection Voucher was issued on February 7, 1989, formally requesting payment of the alleged overpayment in the amount of $239,730.

Thereafter, on December 20, 1989, Cupey Bajo filed its complaint in this court pursuant to 41 U.S.C. § 609(a). Therein, Cupey Bajo avers that it is entitled to recover the $169,905 underpayment, and concomitantly, that the $239,730 alleged overpayment

claim by defendant should be denied. In response to the foregoing, jurisdiction, proffering documentary evidence purportedly showing that Cupey Bajo failed to properly certify its $169,905 claim as required by 41 U.S.C. § 605(c)(1) of the CDA, and further averring that Cupey Bajo failed to file any claim whatsoever with the CO to contest the alleged $239,730 overpayment voucher issued by the VA. In opposition, Cupey Bajo insists that the RUSCC 12(b)(1) motion should be treated as a motion for summary judgment because the defendant relies on evidence outside of the pleadings, and, in addition, the defendant has failed to fulfill the procedural requirements for such a motion. With respect to the jurisdictional allegations raised by the defendant, Cupey Bajo asserts that it properly certified its claim for $169,905 when it filed the October 23, 1984 Statement with the VA to establish the actual per diem rate. Moreover, it contends that the $239,730 overpayment is not a contractor's claim but rather a government claim, and that it was, therefore, not required to submit a statutorily certified claim in order to contest the VA assessment prior to filing in the Claims Court.

### ISSUES

Against this background, we shall address four issues in resolving the motion to dismiss. We must determine (i) whether the RUSCC 12(b)(1) motion to dismiss for lack of jurisdiction should be converted into a RUSCC 56 motion for summary judgment because it relies on evidence outside of the pleadings; (ii) when, *i.e.*, the date as to which, Cupey Bajo filed its CDA "claim"; (iii) whether the alleged $169,905 claim was properly certified as required by 41 U.S.C. § 605(c)(1) of the CDA; and finally, (iv) whether Cupey Bajo was required to submit a § 605(c)(1) certified claim in opposition to the $239,730 alleged overpayment assessed by the VA.

For reasons explained below, we find that a motion to dismiss for want of jurisdiction may properly reference matters outside the pleadings if that evidence is necessary to the resolution of vital jurisdictional

issues. Further, we find that the $169,905 statutory claim was filed on June 8, 1987, but that letter from Mr. Oyola to the CO, including the attached October 23, 1984 Statement of Reimbursable Cost, does not singularly or collectively meet any of the three essential certification requirements outlined in 41 U.S.C. § 605(c)(1). Therefore, that claim must be dismissed. However, we also find that the $239,730 assertion is a government claim, and that Cupey Bajo was *not* statutorily required to file a CDA certified claim before contesting that assessment in this court. Moreover, because the VA claims $239,730 in money damages from Cupey Bajo, we possess the requisite jurisdiction to determine the merits of that assessment even after dismissing the $169,905 claim by the contractor. We will next discuss each of these issues *seriatim*.

## DISCUSSION

### A. *The Motion*

The first question that we must resolve before reaching the jurisdictional issues is—whether the present RUSCC 12(b)(1) motion to dismiss should be converted to a RUSCC 56 motion for summary judgment because the defendant has referenced matters outside the pleadings. At the outset, we observe that, as a general rule, deliberations on RUSCC 12 motions to dismiss are normally limited to the pleadings. In this context, it is well established that facts alleged in the complaint are usually construed in a light most favorable to the non-movant. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Thus, when passing on motions to dismiss for lack of jurisdiction, the facts alleged in the complaint are usually deemed to be true and correct for the limited purposes of the motion. *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir.1988) (citations omitted). Here, Cupey Bajo affirmatively asserts in its complaint that it filed a properly certified claim with the CO under 41 U.S.C. § 605(c)(1) for the payment of $169,905; that this claim was formally denied by the CO on December 21,

1988; and that it thereafter filed a timely claim in the Claims Court pursuant to the direct access provisions of 41 U.S.C. § 609(a) on December 21, 1989. Undoubtedly, these alleged facts, if left unchallenged, would, of course, be sufficient to support CDA jurisdiction in and of themselves. Stated another way, if we limited our inquiry on a motion to dismiss for want of jurisdiction to the facts alleged only in the complaint and deemed all of them to be true and correct pursuant to the general principle of law typified by *Scheuer*, there would be no threshold jurisdictional question for decision at all in this case, and our analysis would obviously be at an end.

However, notwithstanding the fact that we are here addressing defendant's motion, it does not concede for the limited purposes of the motion the truth of the critical facts pled by plaintiff. To the contrary, defendant vigorously asserts that the $169,905 overpayment claim was not *properly* certified under the CDA, and, for that reason, we do not have jurisdiction over this matter. To bolster its argument, the defendant has proffered independent documentary evidence purporting to establish that Cupey Bajo failed to comply with the salient requirements of 41 U.S.C. § 605(c)(1). Therefore, because defendant contests the sufficiency of the jurisdictional factual allegations contained in Cupey Bajo's complaint, it necessarily disputes the applicability of the general rule that the facts should be viewed in the light most favorable to the non-movant.

Defendant does so for good reason, for the application of the general rule is not absolute. This is true because only those *unchallenged* facts are deemed to be true and correct when a RUSCC 12 motion to dismiss alleges lack of jurisdiction. *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989) (citation omitted). Consequently, "if a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the ... court may consider relevant evidence in order to resolve the factual dispute." *Reynolds*, 846 F.2d at 747 (citations omitted). Clearly

then, on the facts at bar, the defendant is entitled to introduce, and we are authorized to examine, evidence outside of the pleadings without converting the motion to dismiss into a motion for summary judgment when, as here, jurisdictional facts are disputed. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947).

 Moreover, it is clear beyond cavil that a motion for summary judgment is not the proper procedural vehicle for contesting fundamental jurisdictional issues. This is so because if we were to transform the present motion into a RUSCC 56 motion for summary judgment, we would, in essence, be deciding the matter *on the merits and with prejudice.* Without jurisdiction, we obviously do not have that power. It is well settled that a question relating to subject matter jurisdiction goes to the very heart of our power to hear a controversy, and any decision on the merits rendered in the absence of such authority would, of course, be a nullity. *See, e.g., Alabama Hospital Association v. United States*, 228 Ct.Cl. 176, 181–182, 656 F.2d 606, 610, *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). Therefore, we are constrained to hold that "jurisdictional issue[s] [are] properly raised by a motion to dismiss, or in a responsive pleading, and not by a [RUSCC 56] motion for summary judgment." *Fidelity & Deposit Co. v. United States*, 2 Cl.Ct. 137, 142 (1983), *citing* 6 J. Moore, Moore's Federal Practice ¶ 56.03. Consequently, and against this background, it would be fundamental error for us to convert the subject RUSCC 12(b)(1) motion to dismiss for lack of jurisdiction into a RUSCC 56 motion for summary judgment merely because the defendant has submitted evidence outside of the pleadings. Therefore, we find that this matter is properly framed as a motion to dismiss for lack of jurisdiction under RUSCC 12(b)(1).[1]

---

**1.** In contrast, a RUSCC 12(b)(4) motion for failure to state a claim and RUSCC 12(c) motion for judgment on the pleadings may, under appropriate circumstances, be treated as motions for summary judgment if they are based on

**B.** *The CDA "Claim"*

 We now turn to the jurisdictional issues raised by the defendant in its RUSCC 12(b)(1) motion to dismiss. As the central thrust of its motion, the defendant alleges that Cupey Bajo failed to comply with the certification requirements of 41 U.S.C. § 605(c)(1) when it filed its $169,905 claim with the CO. However, before we can reach that issue, we must first ascertain—which document constitutes the actual statutory claim. Cupey Bajo argues that the CDA claim was filed on October 23, 1984, when it provided the CO with the Statement outlining the statistical data concerning the total number of inpatient hospital service days provided during the contract term, the information concerning the reimbursable expenses incurred during the contract term, and the resulting per diem rate calculation. The defendant avers, however, that Cupey Bajo failed to file a CDA claim until June 8, 1987, when Mr. Oyola asserted that the actual per diem rate was $72.95; that Cupey Bajo provided 24,203 days of inpatient care to VA beneficiaries during the contract term; and that Cupey Bajo was entitled to receive an additional $169,905 from the defendant. We agree with the defendant and find that the CDA claim was filed on June 8, 1987.

The word "claim" is a term of art that is *not* defined by the CDA. However, ¶ 5(c) of the disputes clause contained in the contract executed by Cupey Bajo and the VA provides, in part, that:

(i) [The term] "claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(ii) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the [CDA]. However, where such submission is subsequently not acted upon in

evidence not contained in the pleadings. *See, e.g., Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Torres v. First State Bank of Sierra County*, 550 F.2d 1255 (10th Cir.1977).

a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the [CDA].

(iii) A claim by the contractor shall be made in writing and submitted to the Contracting Officer for decision. A claim by the Government against the contractor shall be subject to a decision by the Contracting Officer.

*See also* 48 C.F.R. § 33.201.

Only the June 8, 1987 letter satisfies the ¶ 5(c)(i) definition of a claim. It clearly seeks, as a legal right, the payment of an additional $169,905 for services purportedly supplied under the terms of the contract. In this respect, it is well established that a contractor must submit a written request to the CO asserting, as a legal right, that it is entitled to a specified monetary sum in order to make an assertion of a claim within the purview of the CDA. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1395 (Fed.Cir.1987). There are no magic words, but "the contractor [must] submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and the amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987) (citation omitted). The June 8, 1987 letter is the only submission that fulfills all of these fundamental conditions.

In contrast, the October 23, 1984 Statement is passive and fails to make an affirmative request for the payment of a specific monetary sum. It shows that only Cupey Bajo calculated an actual per diem rate higher than the estimated contractual per diem rate and nothing more. In this context, we note also that the Statement fails to make any allegations regarding the number of days of inpatient care *actually provided to VA beneficiaries,* a crucial piece of information in computing the amount of any alleged underpayment. Thus, in view of the failure to submit a request for a specific monetary sum alleged to be due, and the absence of that data necessary to calculate the amount of that sum, we conclude that the Statement

simply does not rise to the level of a claim under ¶ 5(c)(i).

Moreover, the June 8, 1987 letter is also the only filing that satisfies ¶ 5(c)(ii) of the contract disputes definition of a claim. As that paragraph shows, even a request for the payment of a specified monetary sum is not a claim under the CDA unless it is disputed. A dispute does not arise, of course, until *both* parties express their disagreement. *See Keystone Coat & Apron Mfg. Corp. v. United States,* 150 Ct.Cl. 277, 281–282 (1960). Here, while the VA did not immediately take issue with the assertions contained in the June 8, 1987 letter from Mr. Oyola, it did dispute the contents of that submission following the conclusion of its audit in September of 1987. Following the completion of that audit, the VA determined that the actual per diem rate calculations by Cupey Bajo, the number of inpatient hospital service days allegedly provided to VA beneficiaries, and the resulting $169,905 claim were all incorrect, and that, conversely, Cupey Bajo was liable to the VA for a $239,730 overpayment. The CO reported these audit results on April 21, 1988, and Cupey Bajo contested them in a meeting on August 10, 1988, and by letter on September 1, 1988. By doing so, Cupey Bajo created a dispute, and, in effect, it converted the June 8, 1987 letter into a CDA claim under ¶ 5(c)(ii) of the contract. For these reasons, we conclude that Cupey Bajo did not make a CDA claim until June 8, 1987, and we will examine that submission in light of the 41 U.S.C. § 605(c)(1) certification requirements.

C. *Was The $169,905 Underpayment Claim Properly Certified?*

We now turn to the definitive jurisdictional issue raised by the defendant in its RUSCC 12(b)(1) motion to dismiss. For claims under the CDA, it is clear—that a contractor must make a written demand to the CO for payment when seeking to recover sums in excess of $50,000; that such claims must be statutorily certified under 41 U.S.C. § 605(c)(1); and that the CO must render an adverse ruling on that claim under 41 U.S.C. § 605(c)(2); or there must be a deemed adverse decision under

§ 605(c)(5) before we can reach the merits of a complaint filed in the Claims Court under the direct access provisions of 41 U.S.C. § 609(a). Here, we have determined—that Cupey Bajo filed its $169,905 underpayment claim with the CO on June 8, 1987; that claim was denied by the CO on December 21, 1988; and that Cupey Bajo filed its complaint here on December 20, 1989. Thus, the dispositive issue here is—whether the June 8, 1987 claim was properly certified under the CDA. For the reasons set forth hereinafter, we find that it was not.

■ Certification is governed by 41 U.S.C. § 605(c)(1), which states,[2] in pertinent part, as follows:

> [F]or claims more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

"It is well settled that the certification requirement is a jurisdictional prerequisite that must be satisfied by the contractor before it may appeal the contracting officer's claim denial." *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed.Cir.1991) (citation omitted). "To properly certify a claim a contractor must make a statement which makes all [three] of the assertions required by 41 U.S.C. § 605(c)(1)." *W.H. Moseley Co., Inc. v. United States*, 230 Ct.Cl. 405, 407, 677 F.2d

850, 852, *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

■ While the contractor does not need to "precisely parrot the words of the statute," it necessarily must "clearly and unequivocally" allege the substance of each of the three elements. *Aeronetics Division, AAR Brooks & Perkins Corp. v. United States*, 12 Cl.Ct. 132, 135 (1987). In other words, we must scrutinize the claim to ensure that each of the three statutory elements is affirmatively averred, and no less than substantial compliance may be enough to satisfy the certification requirements of 41 U.S.C. § 605(c)(1). *See United States v. General Electric Corp.*, 727 F.2d 1567, 1569 (Fed.Cir.1984) (contractor explicitly alleged the two primary elements for certification and substantially asserted the third).

■ Thus, we will examine the June 8, 1987 transmittal letter and the attached October 23, 1987 Hospital Statement of Reimbursable Costs to ascertain whether within said submission there is any clear and unequivocal declaration (i) that the claim was made in good faith, (ii) that the supporting data is accurate and complete, and (iii) that the amount requested accurately reflects the adjustment owed by the defendant.[3] It is, of course, critical to our analyses to observe that said criteria are in the conjunctive, thus all must be met to satisfy the obligatory statutory certification requirement. The substance of the June 8, 1987 claim is contained in the cover letter, which states, in part, as follows:

---

2. Paragraph 5(d) of the contract in all material respects mirrors 41 U.S.C. § 605(c)(1) of the CDA. Paragraph 5(d) provides that:
 For contractor claims of more than $50,000, the contractor shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the contractor's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

3. Properly certified claims under the CDA must also be in writing and signed by an authorized representative of the contractor. Claims by cor-

porate contractors such as Cupey Bajo must be signed by either a "senior company official in charge at ... the plant or location involved" or an "officer or general partner ... having overall responsibility for the conduct of the contractor's affairs." 48 C.F.R. § 33.207(c)(2). This definition of those corporate officers who are authorized to certify a claim is a valid interpretation of the requirements imposed by 41 U.S.C. § 605(c)(1). *Grumman*, at 578–79. Here, Mr. Oyola is the hospital administrator, and he signed the Cupey Bajo claim. Apparently, the defendant is satisfied that Mr. Oyola is an authorized representative under these criteria because it has not raised the issue.

[T]he following is a detail of your debt to our Hospital for the period January 1, 1983 to November 22, 1983:

| | | |
|---|---|---|
| * Cost per diem per our cost report Filed on October 23, 1984 | | $ 72.95 |
| * Less interim per diem rate Authorized in contract | | 65.93 |
| * Cost per diem differential owed To our Hospital | | $ 7.02 |
| * Patient days in our psychiatric wards | | |
| Ward I | 13,628 | |
| Ward II | 10,575 | 24,203.00 |
| * Amount due from V.A. | | $169,905.00 |

A copy of the [per diem] cost report filed by our Institution [on October 23, 1984] is enclosed for your convenience.

■ It is crystal clear that this letter fails to aver facts even blandly approximating any of the three indispensable elements required by 41 U.S.C. § 605(c)(1). In particular, we emphasize the complete absence of the first two certification requirements that "the claim is made in good faith" and that "supporting data are accurate and complete." As stated in *Aeronetics*, 12 Cl.Ct. at 136:

> It is clear that the purpose of the [CDA] was to require the claimant to declare good faith and verify accuracy based on personal knowledge, thereby, reducing the likelihood of frivolous claims. Certification plays a serious role in the statutory scheme in that it is designed "to discourage the unwarranted submission of inflated contractor claims". S.Rep. No. 95–1118, 95th Cong.2d Sess. 1, 8 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5242; *Skelly and Loy v. United States*, 231 Ct.Cl. 370, 376, n. 11, 685 F.2d 414, 418, n. 11 (1982). Consequently, the first and second elements (the "good faith" and the certification that the supporting data are accurate and complete) constitute the core of the statutory scheme.

Moreover, a microscopic analysis of the June 8, 1987 letter reveals that it fails to aver a declaration even approximating an allegation that the $169,905 claim is being made in good faith. In this respect, we note that it is not the defendant's burden, as Cupey Bajo would have us believe, to prove that the claim was filed in *bad* faith. Rather, the plain language of 41 U.S.C. § 605(c)(1) places the onus on the contractor, and, therefore, the defendant needs to simply aver that there is no affirmative allegation of good faith to put the matter in issue. In short, the claim is statutorily deficient in every other respect. This is so because we see no evidence at all of a clear assertion by Cupey Bajo that the $169,905 claim is based on supporting data that are accurate and complete, nor is there any allegation therein that the $169,905 is an *accurate* reflection of the total amount actually due from the defendant under the contract.

Nevertheless, in spite of these patent fatal flaws, Cupey Bajo argues that the three elements are, at least in substance, contained in the "certification" section of the October 23, 1984 Hospital Statement of Reimbursable Cost, which Mr. Oyola attached to his June 8, 1987 transmittal letter. As we have explained, a copy of the Statement was included with the letter apparently to show the CO how Cupey Bajo came to the conclusion that the actual per diem rate was $7.95 higher than the estimated per diem rate contained in the contract. The certification section on that form includes the following statement by Mr. Oyola:

> I, Luis M. Oyola, Administrator [of Cupey Bajo], do certify that I have examined the accompanying statement of total expenses, the allocation thereof between in-patient and out-patient services, and the calculation of reimbursable cost of in-patient service per patient day and out-patient service per visit for the hospital for the [accounting period ending November 23, 1983], and that to the best of my knowledge and belief it is a true and correct statement prepared from books and records of the hospital in accordance with instructions as contained in this statement.

■ This passage does not pass muster under 41 U.S.C. § 605(c)(1) because, like the cover letter, it thoroughly fails to make any of the three obligatory declarations. In this regard, we again stress the absence

of any statement even vaguely resembling an allegation certifying to the good faith of any claim. For the reasons explained in *Aeronetics, supra,* this is a critical deficiency that we simply cannot ignore. The October 23, 1984 Statement is also defective on the second and third statutory elements. In this regard, an examination of the claim shows that while the October 23, 1984 Statement arguably certifies that the statement of expenses "is a true and correct statement prepared from books and records of the hospital . . . ," it clearly fails to certify, as is statutorily required, "that supporting data [*i.e.,* the books and records from which the Statement was prepared in calculating the $72.95 per diem rate and in determining the 24,203 days of VA inpatient care] are accurate and complete. . . ." As a result, the Statement critically fails to verify the accuracy of the data necessary to support those figures, which are integral factors in the formula for computing the amount of any alleged additional payments under the contract. Finally, the Statement does not even come close to fulfilling the third requirement. Indeed, it could not because it does not contain any declaration regarding the alleged total amount due. We find, therefore, that the Statement fails to satisfy any of the three obligatory statutory elements for certification. For all of these reasons then, we conclude that Cupey Bajo never filed a properly certified claim with the CO [4] with respect to the alleged $169,905 underpayment under 41 U.S.C. § 605(c)(1).

### D. *The $239,730 Overpayment Claim*

■ We now turn to the $239,730 assessment levied against Cupey Bajo by the VA for an alleged overpayment. Cupey Bajo concedes that it failed to file any claim whatsoever with the CO challenging that assessment, certified or otherwise, but argues that it was not required to do so before contesting it directly in the Claims Court because the assessment is a claim for money damages by the government.

In this respect, it is settled law that contractors are not required to submit a certified claim to the CO under 41 U.S.C. § 605(c)(1) in response to a government claim for a monetary sum in excess of $50,000. As explicitly stated in *Placeway Construction Corp. v. United States,* 920 F.2d 903, 906 (Fed.Cir.1990), if the CO issues "a final decision on [the] government claim, the Claims Court has jurisdiction, even though the claim was not certified." The parties here essentially drafted this principle into the disputes provisions of their contract, first by requiring nothing more than a final decision by the CO on government claims under ¶ 5(c)(iii), *see supra,* and secondly, by explicitly agreeing in ¶ 5(d), *see* note 2, *supra,* that certified claims would be required only "*[f]or contractor claims* over $50,000." The defendant contends, nevertheless, that this is another claim by Cupey Bajo, and that it is therefore subject to the jurisdictional certification provisions of 41 U.S.C. § 605(c)(1). Thus, the issue here is clear cut. We must determine—whether the $239,730 assessment is a government claim or a claim by Cupey Bajo which must be statutorily certified.

■ It is plainly evident that the $239,730 assessment is not a claim by Cupey Bajo, but rather a government claim. This conclusion is inescapable under the clear language of the contract claim definitions contained in ¶ 5(c). Specifically, ¶ 5(c)(i) states that the term "claim" means "a written demand or assertion *by one of the parties seeking,* as a legal right, *the payment of money* . . . arising under or relating to [the] contract." The VA made such a written demand for the payment of money on April 21, 1988, when it disclosed the audit results to Cupey Bajo, and stated its intention to issue a collection voucher to recoup the purported $239,730 overpayment. Cupey Bajo disputed the findings and conclusions related to that determination in a meeting with the CO on Au-

---

**4.** We note that the CO did not cure these certification deficiencies by acting on the claim. The CO cannot waive jurisdiction, and his decision is a legal nullity because it was based on a defective claim. *See, e.g., W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir. 1983); *Moseley,* 230 Ct.Cl. at 407, 677 F.2d at 852.

gust 10, 1988, and in a letter dated September 1, 1988, fulfilling the "dispute" requirement of ¶ 5(c)(ii). The CO subsequently issued a final decision on the $239,730 overpayment claim on December 21, 1988, and thereafter filed a collection voucher for that amount on February 7, 1989. On these indisputable facts, there is no doubt in our mind that this was a claim by the VA against Cupey Bajo. Thus, we conclude that plaintiff was not required to file a certified claim for that amount before instituting suit directly in the Claims Court.

 While we must dismiss the $169,905 underpayment claim because it was not properly certified under 41 U.S.C. § 605(c)(1), there is no such impediment to our consideration of Cupey Bajo's attempt to nullify the $239,730 assessment imposed on it by the VA. In this respect, we also observe that we are not required to dismiss a complaint for lack of jurisdiction when the contractor is seeking, in effect, a declaratory judgment in opposition to a government claim for money damages. In other words, the Claims Court has the jurisdictional power to issue a declaratory judgment when a contractor contests the merits of a government claim seeking the repayment of money. *Ralcon, Inc. v. United States*, 13 Cl.Ct. 294, *passim* (1987). *Overall Roofing & Construction, Inc. v. United States*, 929 F.2d 687 (Fed. Cir.1991), does not require a different result. There the Court of Appeals for the Federal Circuit determined that the Claims Court does not have the jurisdiction to issue declaratory judgments on government claims that do not involve specific monetary sums. Because the government's claim here asserts $239,730 due it from plaintiff, *Overall Roofing* has no application in this case.

### CONCLUSION

We find that Cupey Bajo failed to file a certified claim with the CO seeking the payment of an additional $169,905, as it was required to do under 41 U.S.C. § 605(c)(1). Thus, the RUSCC 12(b)(1) motion to dismiss relative to that claim is hereby GRANTED, and, pursuant to Rule 54(b), there being no just reason for delay, the Clerk of the Court is hereby directed to enter a partial judgment dismissing this claim without prejudice for lack of jurisdiction. No costs.

However, because the VA's demand for the repayment of $239,730 was a claim by the government, we further find that Cupey Bajo was not required to file a certified claim contesting it before pursuing declaratory relief here. We have jurisdiction over that claim, and, to that extent, the RUSCC 12(b)(1) motion to dismiss is hereby DENIED.

A telephonic status conference shall be held on July 10, 1991, at 10:00 a.m. ET (11:00 a.m. in Puerto Rico) for the purpose of determining further proceedings. The call will be placed to both parties by the court.

IT IS SO ORDERED.