SIPCO SERVICES & MARINE INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–604C.

United States Court of Federal Claims.

Feb. 28, 1994.

---

Nicholas S. Papleacos, Atlanta, GA, for plaintiff.

R. Alan Miller, Washington, DC, with whom was Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, for defendant.

## OPINION

ROBINSON, Judge:

This matter is before the court on defendant's January 15, 1993, Motion for Partial Dismissal pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Plaintiff, Sipco Services & Marine, Inc. (Sipco), seeks money damages allegedly arising from a contract with the National Aeronautics and Space Administration (NASA). In its complaint Sipco asserts three counts. In its motion defendant asks the court to dismiss Count II because the claim was not properly certified, and Count III because the contracting officer never issued a final decision on that claim. Oral argument was held on November 18, 1993, and supplemental briefing was ordered. After hearing oral argument, and after carefully considering the parties' briefs, the court grants defendant's motion as to Count II and denies defendant's motion as to Count III.

### Factual Background

As part of its business, plaintiff performs coating removal and replacement for the commercial and industrial construction industry. On May 3, 1990, Sipco and NASA entered into Contract No. NAS2 13209 for the removal and replacement of coatings containing lead on portions of the exterior of a wind tunnel at the Ames Research Center at Moffett Field, California. The wind tunnel was divided into thirteen "areas" for the purpose of designating which parts of the structure were to be coated under the contract; Sipco was to recoat areas 1, 2, 3, 10 and 13. The contract was for $2,370,152.00, with the work to be completed within 240 days of the issuance of a Notice to Proceed. Prior to the expiration of the 240 days, the completion date was extended to August 16, 1991. On August 7, 1991, NASA issued an order for Sipco to show cause why it should not be terminated for its apparent failure to complete the work by August 16, 1991. Despite Sipco's response offering its explanation and requesting an extension of time, NASA issued a termination for default on September 4, 1991.

On or about April 27, 1992, Sipco submitted a letter (April claim) to the contracting officer seeking conversion of the termination for default to one for convenience, payment of its termination for convenience costs, an extension of time for contract performance, recovery of costs for alleged additional work, and payment of unpaid fringe benefits which the Department of Labor claims Sipco owes. Mr. Roy Brock, president of Sipco, attempted to certify the April claim by including the following language in the claim letter:

> I hereby certify that I have reviewed the claims contained herein and that they are true and correct to the best of my knowledge, information and belief. I further certify that I am an officer of Sipco Services & Marine and am authorized to execute this claim on behalf of the Company.

No decision of the April claim was issued by the contracting officer.

On May 22, 1992, NASA and Sipco's surety, Insurance Company of North America (ICNA), memorialized an agreement (Settlement Agreement) concerning the method by which the work remaining in Sipco's contract would be performed. In the Settlement Agreement, ICNA agreed to, *inter alia,* compensate NASA for alleged damages arising out of the additional time required to complete the work and pay the contract price of a succeeding contractor to complete the work. After ICNA made payments to NASA, it sought and obtained reimbursement from Sipco for all monies paid to NASA, and for those spent in investigating and addressing the demand by NASA on Sipco's performance bond.

Sipco then submitted a revision of its April claim by letter dated July 29, 1992 (July claim). In addition to reiterating those matters raised in the April claim, the July claim included amounts sought as a result of Sipco's surety having taken responsibility to complete performance of the contract. The July claim was properly certified by Mr. Brock using the precise language set forth by the Contracts Disputes Act of 1978 (CDA), 41 U.S.C. § 605(c)(1) (1988).

On September 3, 1992, Sipco filed its original complaint containing two counts in this court. In Count I, Sipco requested $610,477, the remainder of the contract balance allegedly due. In Count II, Sipco sought conversion of the termination for default to one for convenience, and the additional damages set out in the April claim to the contracting officer totalling $2,585,419.85. Sipco filed an amended complaint on October 19, 1992, seeking the same recovery in Counts I and II, and adding Count III requesting $3,588,-922.41, for those damages sought in the July claim to the extent that such sums are not awarded pursuant to Counts I or II. Defendant only challenges Counts II and III in its motion for partial dismissal.

### Contentions of the Parties

Defendant contends that this court lacks jurisdiction to hear either Counts II or III of Sipco's original and amended complaints. Defendant asserts that plaintiff's April claim lacked the proper certification required by statute. Without the submission of a properly certified claim to the contracting officer, defendant argues, this court lacks jurisdic-

tion to entertain Count II of Sipco's complaint. Defendant also maintains that Count III, first presented to the contracting officer in the July claim, must be dismissed on jurisdictional grounds because no final decision on that claim has been issued by the contracting officer. According to defendant, because Sipco's original complaint was filed while the July claim was still pending before the contracting officer, his authority to consider the claim and issue a final decision was withdrawn.

Sipco counters that any deficiency that may have existed in the April claim was fully cured by the properly certified July claim. Further, Sipco argues that since the contracting officer did not issue a decision on the July claim and sixty (60) days has passed since it was presented to the contracting officer, it is deemed denied. Sipco concludes that because certification on the July claim is sufficient and is relied upon by Sipco as the jurisdictional basis for Counts II and III, defendant's motion must be denied.

### DISCUSSION

■ Under the rules of this court, evaluations of a motion to dismiss for lack of jurisdiction are usually limited to the pleadings, and the unchallenged facts alleged in the complaint are deemed to be true and are construed in a light most favorable to plaintiff. RCFC 12(b)(1); *Cupey Bajo Nursing Home, Inc. v. United States,* 23 Cl.Ct. 406, 411 (1991). However, when jurisdiction is questioned, it is plaintiff's burden to establish the court's jurisdiction over the subject matter. *See Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109 (1986).

### 1. *Count II.*

■ Submission of a properly certified claim to the contracting officer is a jurisdictional prerequisite to filing suit in the United States Court of Federal Claims. *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir. 1985). For claims in excess of $50,000, the CDA mandates that the contractor shall certify that:

1. The claim is made in good faith.

2. The supporting data are accurate and complete to the best of his knowledge and belief.

3. The amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1). While a contractor is not required to parrot the precise words of the statute, the contractor must clearly and unequivocally comply with the certification provision and simultaneously state all three of its elements. *Aeronetics Div. v. United States,* 12 Cl.Ct. 132, 135 (1987) (citing *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982)).

In its response to Defendant's Motion for Partial Dismissal, plaintiff did not argue that its April claim was properly certified, but instead relied solely on the certification of its July claim. Indeed, Sipco clearly failed to include in the April claim the literal language of the second and third elements of 41 U.S.C. § 605(c)(1). At oral argument, however, plaintiff asserted that documents accompanying the April claim contained language which demonstrate that the certification provision of this statute was substantially complied with and that substantial compliance is all that is required for proper certification according to the United States Court of Appeals for the Federal Circuit in *United States v. General Elec. Corp.,* 727 F.2d 1567 (Fed. Cir.1984). As this issue was not previously raised, the court allowed plaintiff to submit additional documents and a supplemental brief directed to this issue. Defendant filed a supplemental brief in response.

■ After carefully considering the parties' briefs, the court concludes that in its April claim, plaintiff neither fully nor substantially complied with the statutory certification requirement.

In *General Electric,* the contractor, attempting to certify a claim, explicitly alleged the first two elements of 41 U.S.C. § 605(c)(1), but failed to recite the third element, namely, that "the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 727 F.2d at 1569. The

Federal Circuit, looking at the claim and accompanying documents, found that while the third element was not explicitly stated, the information and statements required by statute were provided, and that the contractor had, therefore, substantially complied with the statute.[1] *Id.*

In this case, plaintiff points to language in the April claim itself as well as materials accompanying the claim to show substantial compliance with the statute. Specifically, plaintiff argues that by certifying in the April claim letter that "the claims contained therein ... are true and correct to the best of my knowledge, information and belief" the certifier was "in substance saying that the supporting data was also correct" and, thereby, substantially satisfied the second element, that the supporting data are accurate and complete to the best of the certifier's knowledge and belief.[2] In addition, Sipco argues that the statement in the April claim, that "the claim items contained in III. NASA DELAYS AND HINDRANCES TO THE PROJECT outline the days of delay that Sipco suffered arising from the affirmative actions of NASA as well as the cost," alone satisfies the third element, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.[3]

The court does not agree that the language cited by plaintiff or other portions of the claim show substantial compliance with the statute. Neither the language cited by plaintiff nor the documents accompanying the April claim provide all the information required by the statute. Plaintiff never certi-

fied that the supporting data are complete as required by the second element of the statute, and while the documents accompanying the claim do set forth "costs," the court concludes this is insufficient to satisfy the third element of the statute.

 Moreover, even if the court were to find that plaintiff had satisfied the third element, plaintiff's failure to satisfy the second element, in and of itself, results in a failure to substantially comply with the certification requirement. It is significant that in *General Electric,* the contractor had certified that the supporting data was accurate and complete, *i.e.,* had stated the second element explicitly. This element is at the heart of the certification requirement. *See Aeronetics,* 12 Cl.Ct. at 136. As has been often noted, the certification requirement plays a significant role in the statutory scheme of the CDA and was intended by Congress to discourage the submission of unwarranted or inflated claims. *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1384 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983); *Aeronetics,* 12 Cl.Ct. at 136. Consequently, as the court in *Aeronetics* stated, "the first and second elements (the "good faith" and the certification that the supporting data are accurate and complete) constitute the core of the statutory scheme." 12 Cl.Ct. at 136.

Sipco simply failed to provide in the April claim the information required by statute. Sipco failed to state that the supporting data are complete, a necessary part of the second element of the certification requirement. *Alcan Elec. & Engineering Co.,* 24 Cl.Ct. 704, 709 (1992) ("The second element of

1. *General Electric,* involved a contract for the supply of jet engines. In accordance with certain regulations, contractors were required to negotiate annual advance agreements establishing ceilings for the recovery of independent research and development and bid and proposal costs. In *General Electric,* the claim and accompanying documents included the contracts for which independent research and development and bid and proposal costs were sought; made reference to other correspondence; and enclosed a statement of the overceiling costs allocable to the subject contracts. The claim and accompanying documents also set forth that the contractor requested a final decision from the contracting officer regarding the claim; that the cost comprised what was generally described as over-

ceiling independent research and development and bid and proposal costs allocable to foreign military sales engines, and enclosed a summary of the costs sought; that the claim was made in accordance with the contractual agreement which provided for an equitable adjustment by reason of a Department of Defense policy change; that it was entitled to the adjustment; that the claim was made in good faith; and the supporting data was accurate and complete to the best of the signer's knowledge and belief. 727 F.2d at 1569.

2. Plaintiff's supplemental brief at 3.

3. Plaintiff's supplemental brief at 2.

§ 605(c)(1) is met if the certification includes a combination of good faith and an unqualified assertion that the data is complete."). Moreover, Sipco's contention that by stating the claims "are true and correct to the best of my knowledge, information and belief," the certifier was in substance saying that the underlying data was accurate and complete is unconvincing in view of other decisions of this court. *See Cupey Bajo,* 23 Cl.Ct. at 415–16 (finding that "to the best of my knowledge and belief it is a true and correct statement" fails to meet the second requirement that the underlying data is accurate and complete); *Robin Indus. Inc., Tadcol Gov't Servs. Div. v. United States,* 22 Cl.Ct. 448, 455 (1991) (finding that "the estimate is made in good faith and accurate to the best of our knowledge" does not satisfy the requirement that the underlying data is accurate and complete).

As stated in *Aeronetics,* the certification requirement, including the second element, is essential to the statutory scheme. 12 Cl.Ct. at 136. The statements cited by plaintiff do not, on their own or taken with the entire claim and supporting documents, satisfy the second and third elements of the certification requirement. Accordingly, the court concludes that the April claim was not properly certified and, cannot, therefore, serve as the basis for jurisdiction in this court.

Plaintiff contends that even if the April claim was not properly certified, its properly certified July claim provides jurisdiction over Count II. Defendant, however, asserts that Sipco's reliance is misplaced, because there has been no contracting officer's final decision on the July claim.

■ Section 605(c) of the CDA provides as follows:

(1) A contracting officer shall issue a decision on any submitted claim of $500,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period.

\* \* \* \* \* \*

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

\* \* \* \* \* \*

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter.

41 U.S.C. § 605(c). As a result, in order for this court to have jurisdiction, there must be either a decision by the contracting officer or a failure to decide within the applicable time period. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 183–84, 645 F.2d 966, 971 (1981), *aff'd,* 230 Ct.Cl. 884 (1982).

■ Here, Sipco maintains that the contracting officer failed to issue a final decision on the July claim; thus, the claim is deemed denied pursuant to § 605(c)(5), and the jurisdictional requirements of the CDA are satisfied. The court disagrees. Regarding claims in excess of $50,000, § 605(c)(2) specifically allows the contracting officer sixty (60) days from the receipt of the claim to either issue a decision or inform the contractor when such decision will be issued. When Sipco filed its original complaint, which in Count II sought conversion of the termination for default to a termination for convenience, thirty-eight (38) days had elapsed since it submitted the properly certified July claim seeking the same redress. Absent the passage of sixty (60) days from the submission of the July claim to the contracting officer, Sipco could not deem its conversion claim denied. Accordingly, since no decision, either actual or deemed, had been made by the contracting officer when Sipco filed its original complaint, plaintiff's conversion claim was prematurely filed in this court. *See White Plains Iron Works, Inc. v. United States,* 229 Ct.Cl. 626, 629–30 (1981) ("[s]ince no contracting officer's decision has been made, the plaintiff cannot yet commence suit in this court under the Contract Disputes Act."); *Claude E. Atkins Enters. Inc. v. United States,* 15 Cl.Ct. 644, 646 (1988)

(where plaintiff's written claim was submitted to the contracting officer substantially simultaneously with the filing of the complaint, there was no decision by the contracting officer, actual or deemed, at the time the complaint was filed, and no jurisdiction existed over plaintiff's claim).

■ Moreover, a claim premature for lack of a contracting officer's final decision does not ripen into a mature claim, while suit is pending, with the passage of sixty (60) days. *Mendenhall v. United States,* 20 Cl.Ct. 78, 84 (1990); *see also Sharman v. United States,* 2 F.3d 1564, 1571–72 (Fed.Cir.1993). Once plaintiff's claim for conversion became the subject of litigation in this court, upon the filing of the original complaint, the authority to resolve that claim was withdrawn from the contracting officer and resided within the exclusive authority of the Attorney General pursuant to 28 U.S.C. §§ 516–520 (1988). *See Sharman,* 2 F.3d at 1571; *Durable Metal Prods., Inc. v. United States,* 21 Cl.Ct. 41 (1990). Under these circumstances, plaintiff's claim for conversion cannot be deemed denied, and the court must dismiss Count II on jurisdictional grounds for lack of a contracting officer's final decision.

### 2. *Count III.*

In Count III, Sipco seeks compensation for reimbursement monies arising out of the Settlement Agreement between NASA and ICNA, Sipco's surety. Sipco's request for this reimbursement compensation was first presented to the contracting officer in the properly certified July claim, and was first presented to the court over sixty (60) days later, in the amended complaint on October 19, 1992. The issue before the court is whether Sipco's claim for reimbursement compensation can be correctly deemed denied thereby satisfying the jurisdictional requirements of the CDA.

Defendant argues that despite the passage of sixty (60) days without a contracting officer's decision, the claim cannot be deemed denied. Because the July claim had been pending before the contracting officer for less than sixty (60) days when the original complaint was filed, the defendant contends that the contracting officer's authority to consider the claim was withdrawn. For support, defendant directs the court to 28 U.S.C. §§ 516, 518. Specifically, § 516 provides:

> Except as otherwise authorized by law, the conduct of litigation in which the United States ... is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 516. Section 518 adds that the Attorney General "shall conduct and argue suits and appeals in the ... United States [Court of Federal Claims]." Based on these sections, this court and the U.S. Court of Appeals for the Federal Circuit have found that when the contractor deems his claim denied, after waiting the requisite sixty (60) days, and files suit in this court, the contracting officer's authority over the contractor's claim is withdrawn. *Sharman,* 2 F.3d at 1571; *Durable Metal,* 21 Cl.Ct. at 46.

■ In *Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 534 F.2d 889 (1976), which is binding precedent on this court, the United States Court of Claims agreed with the Government that unless otherwise provided by law, the "Attorney General is charged by statute with exclusive and plenary power to conduct all litigation to which the U.S. is a party." 209 Ct.Cl. at 465, 534 F.2d at 901. However, the *Hughes* court also held that because this power is so broadly inclusive, it must be narrowly construed. It must be limited to conduct of pending litigation against the United States "and does not encompass exclusive control of other *matters which, albeit related, are not yet so pending.*" 209 Ct.Cl. at 465, 534 F.2d at 901 (emphasis added). Indeed, in *Sharman,* the Federal Circuit emphasized that, although once a claim is in litigation the contracting officer's authority to act on that claim is withdrawn, a claim is limited to each claim under the CDA for money that is part of a divisible case. *See Sharman,* 2 F.3d at 1569. Thus, under the CDA, each claim, even if part of the same case, must be considered separately by the contracting officer and a suit filed as to one claim does not divest the contracting officer of authority to consider other claims.

In this case, Sipco's reimbursement claim is related to its claims for the remainder of the contract balance allegedly due, for conversion of the default termination to one for convenience, and for payment of its termination for convenience costs, in that they all stem from the same basic contract. However, it is not so related that it constitutes the same claim under the CDA as a claim is defined by the Federal Circuit. *See Sharman*, 2 F.3d at 1569. In Sipco's reimbursement claim seeking monies paid to its surety for the surety's completion of the contract and investigation of the claim, it seeks monies that it would not necessarily obtain from its claim for conversion, the contract balance, or its termination costs. Each claim is a separate claim under the CDA.

In addition, while these other claims were pending before the court when the July claim was presented to the contracting officer, Sipco's reimbursement claim was not. The basis for the reimbursement claim, the Settlement Agreement, was not even memorialized until almost a month after Sipco had attempted to bring its initial claim before the contracting officer. Construing §§ 516 and 518 narrowly, as the court must, the court finds that the contracting officer's authority to issue a final decision on Sipco's claim for reimbursement of monies paid to ICNA was not withdrawn by the filing of the original complaint. *See Sharman*, 2 F.3d at 1570–72. To hold otherwise would create a procedural block, whereby one phase of a dispute is brought to a standstill because an earlier related phase is already in court. Accordingly, Sipco's deemed denial of the claim regarding monies paid to ICNA was proper, and jurisdiction over Count III exists in this court.[4]

Additionally, defendant alleges that Count III is jurisdictionally premature because it was asserted in an amended complaint which relates back to September 3, 1992, the filing date of the original complaint. Because, on September 3, 1992, the contracting officer did not have sixty (60) days to issue a final decision on the July claim, defendant argues Count III must be dismissed for lack of a contracting officer's final decision. The court cannot accept defendant's use of the relation back doctrine in this context.

Pursuant to RCFC 15(c) "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In the context of circumventing a statute of limitations, this court has interpreted RCFC 15(c) to mean that where an amendment concerns the same conduct, transaction, or occurrence, and where adequate notice exists so that the opposing party is not prejudiced, a supplemental pleading will be deemed to relate back to the date of the original pleading. *Ralcon, Inc. v. United States*, 12 Cl.Ct. 773, 774 (1987). Under the doctrine of relation back, an otherwise time-barred claim will survive a motion to dismiss on jurisdictional grounds if notice of the claim is provided by a timely filed original pleading. *White Mountain Apache Tribe v. United States*, 8 Cl.Ct. 677, 681–82 (1985).

In *Ralcon*, the plaintiff sought to have a later filing relate back to the earlier filing in order to come within the statute of limitations period. Citing *Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 372 F.2d 951 (1967), *Ralcon* liberally construed the notice test and related the plaintiff's amendment back to the timely date of the original filing. In this case, defendant, relying on *Ralcon* and *Snoqualmie*, would have the court strictly apply RCFC 15(c) to oust

---

4. It should be noted that while this court is dismissing Count II, containing a request for conversion of the termination for default to one for convenience, jurisdiction over Count III is not lost merely because the court will have to examine the underlying default termination in order to determine Count III, Sipco's claim for monies paid to its surety. In *Sharman*, the Federal Circuit stressed that a claim for progress payments (which requires analyzing the underlying default termination) and a challenge to a default termination are *always* separate and distinct for jurisdictional purposes. *Sharman*, 2 F.3d at 1570 n. 8. Similarly, a request for conversion of a default termination to one for convenience, and a claim for monies paid to a surety, must be considered separate and distinct for jurisdictional purposes.

plaintiff's claim on a pleading technicality. This position is inconsistent with *Snoqualmie*, which states that Rule 15(c) is to be applied very liberally to lessen the perils of pleading, and to assure that the rights of the parties to a transaction or occurrence can be determined without being disrupted or extinguished by a pleading technicality. 178 Ct. Cl. at 587, 588 n. 5, 372 F.2d at 960 n. 5.

▮ Relation back is a tool the courts use to preserve causes of action that would otherwise be deemed filed out of time.[5] In *Snoqualmie*, the Court of Claims noted that the purpose of the relation back doctrine, then Rule 22(c), is intertwined with that of the statute of limitations, which it allows a party to circumvent. "A primary purpose of statutes of limitations is 'to ensure that parties are given formal and seasonable notice that a claim is being asserted against them.' " 178 Ct.Cl. at 586–87, 372 F.2d at 960, *quoting* 3 *Moore, Federal Practice* ¶ 15.15[2], p. 1018 (1964 Ed.). This court refuses to apply this doctrine in this case and, thus, render a timely and mature claim untimely and premature by artificially relating it back to an earlier date.[6] Sipco was required by the CDA to wait sixty (60) days after submitting its reimbursement claim to the contracting officer before attempting to amend its complaint.[7] To relate Count III back to the date of the original complaint would, in effect, penalize Sipco for observing the filing requirements of the CDA. Such a result is unwarranted by RCFC 15(c) as it relates to the CDA, and contradicts the purpose of the relation back doctrine.

### 3. *Stay of the Proceedings.*

▮ Plaintiff additionally requests that, in the event the court dismisses either Counts II or III, the court stay the proceedings pursuant to 41 U.S.C. § 605(c)(5), and obtain a decision by the contracting officer on those counts. Defendant counters that this court cannot stay this case to obtain a contracting officer's decision on a claim over which the court does not have jurisdiction.

Section 605(c)(5) provides:

> In the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer.

41 U.S.C. § 605(c)(5). The court agrees with defendant that this statute is inapposite in circumstances such as these where the court lacks jurisdiction over the claim. This statute may not be used to obtain a final decision on Count II because this statute applies to claims over which the court properly has jurisdiction. This court *may not* order a stay of the proceedings where the court never properly had jurisdiction. *Aeronetics*, 12 Cl.Ct. at 138 (no stay allowed to correct defective certification).[8] As the Supreme

---

5. Defendant has not cited to a single case where this court has applied the relation back doctrine in a context that did not involve a statute of limitations issue.

6. Arguably, this court cannot apply the doctrine in this case. While in *Sharman* no relation back argument was raised, the court did find that a claim which was filed in an amended complaint would be considered as of the filing of the original complaint if the original complaint contained the same claim. 2 F.3d at 1571–72. A claim is the same if it "alleges entitlement to the same money based on the same partial performance, only under a different legal label." *Id.* at 1571. Conversely, if a claim appearing in an amended complaint is not the same as one found in the original complaint, jurisdiction should be considered at the time the claim is actually filed. In *Sharman*, the court stated that a claim for progress payments and a challenge to a default termination are always separate and distinct for jurisdictional purposes. 2 F.3d at 1570–71. Like-

wise, a claim for monies paid to a surety and a request for conversion of a default termination to one for convenience should be separate and distinct. In the present case, these are clearly not the same claim, and jurisdiction should be determined at the time the reimbursement claim was actually filed.

7. Defendant's reading of RCFC would have required Sipco, in order to get Count III before the court, to file it in a separate complaint, and then move to consolidate the two suits. The court, however, finds such a result wasteful, unnecessary and, accordingly, inconsistent with RCFC 1(a)(2), which states that these rules shall be construed to secure the just, speedy, and inexpensive determination of every action.

8. In support of its position, plaintiff relies on *Durable* for the proposition that this court may, in its discretion, stay a proceeding and remand a claim to the contracting officer pursuant to 41

Court has stated, a court may not extend its jurisdiction where none exists, even if the interests of justice so dictate. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). Accordingly, since this court does not have jurisdiction over Count II, it cannot remand that claim to the contracting officer and no stay will be granted.

### CONCLUSION

In conclusion, this court grants defendant's motion in part and denies it in part. With regard to Count II, defendant's motion is granted and Count II is dismissed without prejudice under RCFC 12(b)(1), because it was never properly certified and, as a result, this court lacks jurisdiction over that count. As to Count III, defendant's motion is denied. As this claim was properly deemed denied, this court has jurisdiction.

U.S.C. § 605(c)(5). In *Durable,* however, the claim was properly before the court, as distinguished from this case, where the court has never had jurisdiction over Count II.