**DETERDING v. UNITED STATES.**
**No. 47081.**

Court of Claims.
Jan. 6, 1947.

JONES, J., dissenting.

John F. Downey, of Sacramento, Cal. (Downey, Brand and Seymour, of Sacramento, Cal., on the brief), for plaintiff.

Thomas L. McKevitt, of Washington, D. C., and David L. Bazelon, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and MADDEN, WHITAKER, LITTLETON, and JONES, Judges.

MADDEN, Judge.

The United States has demurred to the plaintiff's petition. The allegations of the petition are, in substance, as follows: The plaintiff's predecessor in title, Margaret C. Hamilton, made a deed to Anderson in 1909, and Anderson thereafter conveyed his interest to the United States. The deed described the land, the interests in which are involved in this suit, which land lay adjacent to the Sacramento River in California. The deed contained the following language:

"To have and to hold all and singular the said premises, together with the appurtenances, unto the said party of the second part and to his heirs and assigns forever.

"The said land hereby conveyed is to be used for the purpose of widening and straightening the Sacramento River from Rio Vista to Collinsville or for works or purposes incidental thereto and in connection therewith; and it is understood that the grantors or their assigns shall have at all times the right to make such use of the lands hereby conveyed as may in the judgment of the grantee or his assigns hereunder be made without interfering in any manner with the said works or purposes for which this deed is made.

"And it is further understood that the grantors and their assigns, owners of the land adjacent on the northwest to the land hereby conveyed, shall have and do hereby reserve the right of access across the land hereby conveyed to and from the bank of the river as now or hereafter located, for the purpose of shipping and receiving freight upon or from boats or vessels plying in the river, provided that such right of way shall be used in such manner, and provided that such right of way can be used in such manner, as not to interfere in any way with the works or purposes for which this deed is made."

The plaintiff succeeded to all the interests of Hamilton in the lands mentioned in the deed. Prior to July 1, 1942 the plaintiff leased the lands here involved to the Amerada Oil Company and the American Petroleum Corporation for the production of oil and gas. On July 1, 1942 the United States entered into a compensatory royalty agreement with the Amerada Oil Company which had gas leases on other lands in the neighborhood of the land here involved, under the terms of which the United States agreed not to drill or permit the drilling of gas wells on the land here involved, and the Amerada Company agreed to pay to the United States as a compensatory royalty a share, proportionate to the acreage of the land here involved in relation to the whole area from which gas was to be taken, of the sale price which Amerada should receive from the sale of gas taken from wells in the area. The United States agreed to make a contribution of $25,000, which was one-half the cost of a well, and $100 per month for upkeep and current expense.

The agreement contained the following language in its introductory part:

" * * * Whereas, the Secretary of the Interior represents that he has the power and authority under the provisions of said Executive Order, and his general administrative authority, including powers vested in him by the Act of February 25, 1920 (41 U.S.Stats. 437), as amended by the Act of August 21, 1935 [49 Stat. 674] (46 U.S. Stats. 1523), and other applicable acts of Congress, rules, regulations and orders, to enter into this agreement; * * *." and also the following final paragraph

"9. Government does not warrant title to said parcels but if at any time it shall be finally determined by a final judgment or decree of a Court of competent jurisdiction, or otherwise, that the United States has no title to the mineral rights underlying said parcels or any portion or portions thereof, no further payment shall be required by Amerada hereunder with respect to any such parcel or any portion or portions thereof. * * *"

After having made this agreement with the United States, the Amerada Company did not continue its oil and gas lease from the plaintiff, which expired on September 17, 1942. It has paid the United States some $80,000 under the agreement described above. The plaintiff seeks, in this suit, to recover the amount which the United States has so received. She seeks, in the alternative, to recover the entire present value of the gas interests in the land, on the theory that the United States has taken those interests.

The plaintiff claims that after the deed from Hamilton to Anderson, Hamilton, and now the plaintiff as her successor, continued to be the owner of the gas in the land described in the deed, or of the sole right to produce and recover the gas. She says that the deed conveyed to Anderson only an easement to do upon the land whatever was necessary for widening and straightening the river, leaving in the grantor all other uses and interests in the land. She further says that if Anderson received more than an easement, and became the owner of corporeal interests in the land, still the language of the deed made it plain that the grantor was to retain many interests in the

land, and that those interests, whether they be easements, profits a prendre, or rights under running covenants, include the right here in question, the sole right to take gas from the land.

We think that the plaintiff owns the exclusive right to take gas from the land. We think that the deed to Anderson, when properly analyzed, may more properly be said to have granted an easement than a corporeal interest. From a reading of the whole deed it is plain that the words of purpose contained in it were not insignificant surplusage, as words of purpose, without more, are frequently held to be. That the grantee was to have the land only for the stated purpose is made plain by the succeeding language which provides in substance that the grantor is to have the right to make all other uses of the land not inconsistent with the stated purpose. Since the purpose of entering on the land to change the course of the stream is much more in the nature of a jus in re aliena than the right, for example, which the grantor was clearly intended to have, to occupy and cultivate the land, we think the conventional pattern of legal interests is better followed by treating the grantee's particular interest as the easement, and the grantor's retained interest as the corporeal and residuary interest in the land.

We agree, however, with the plaintiff, that the application of particular names to the interests involved is not decisive of the ownership of the interests. The right to take gas from the land of another is a conventional subject matter of a profit a prendre, hence if the parties intended, or if the law of the State of California requires, and we are not suggesting that it does, that the deed given to Anderson granted corporeal interests to him, the right of the grantor to take gas from the granted land was nevertheless a lawful and conventional interest.

The provisions of the California Civil Code reenforce our views. Sections 1641 and 1066, which require that the whole document be read before a decision is reached as to the effect of any part of it, and Section 1069, which says that reservations in deeds should be construed in favor of the grantor, are applicable. The spirit of the latter section is surely applicable to a provision, other than a technical reservation, which expresses an intent that, in spite of the deed, the grantor is still to have interests in the land as, for example, by way of an exception or of a covenant running with the land.

We have concluded, then, that the plaintiff is the sole owner, of the right to take gas from the land in question. The United States has, under its agreement with the Amerada Company, received money for its agreement to refrain from doing what it had no right to do. The plaintiff sues for the money so received. The United States urges that this court has no jurisdiction to grant the relief demanded. The question is difficult, indeed. The basis of our jurisdiction, if it exists, is that the plaintiff has rights arising out of a contract which the United States has breached. We think that the relation between the plaintiff and the United States, in relation to their respective rights in the land in question, is a conventional or contractual relation, within the meaning of our jurisdictional statute, 28 U.S.C.A. § 41 et seq. See Fletcher v. Peck, 6 Cranch 87, 136, 3 L.Ed. 162. The deed from the plaintiff's predecessor to the predecessor of the United States was a determination and statement of what rights the parties and their successors were to have in this land. When the United States took the Anderson title, it took it, not by acquisition in some overriding capacity as sovereign, but as successor to Anderson, and subject to his obligations, as they were stated in the deed. His obligations became those of the United States, because it was the intent of the parties, and is the rule of law, that successors shall be bound.

The question remains, Was it a breach of contract for the United States to enter into the compensatory royalty agreement with Amerada, and receive the payments provided in that agreement? The only rational basis for the agreement was that the United States was asserting ownership of the right to the gas, though it refused to warrant its title to it, and the Amerada Company was buying protection from a possible competing well located on the land in question. We think that the

provision in the deed to Anderson, that the grantor and its successors should have the use of the land for all purposes except the stated purpose for which the grantee might use it, constituted an agreement that the grantee and its successors would not claim rights inconsistent with that provision, and thereby cast doubts upon the grantor's title to the rights promised her. And we conclude that when the United States, solely on the basis of the documents here involved, asserted title to and sold for money an interest which belonged to the plaintiff, and which, as we have construed the transaction, it had agreed that it would not assert, it breached the contract contained in the deed to Anderson. In these circumstances we think that the net amount of the money received by the United States belongs to the plaintiff, as a fair measure of the damage caused her and as a restitution to her of what the United States has gained by its breach of its contract.

The defendant's demurrer is overruled.

It is so ordered.

WHITAKER and LITTLETON, Judges, and WHALEY, Chief Justice, concur.

JONES, Judge (dissenting).

It is my view that the term "use" as set out in the reservation is not sufficient to cover the right on the part of plaintiff to remove and dispose of the oil and gas.

Oil and gas while in the ground are a part of the corpus of the property. Taking them out and disposing of them is not merely a use of the property, but is a removal and sale of a part of the body of the property. The reservation of the right to use the property does not so limit a deed that is otherwise complete as to permit the grantor to sell the property or any part thereof.

While this viewpoint is somewhat weakened by the stated purpose of the transfer, to wit, "widening and straightening the Sacramento River," yet when the whole instrument is considered, it seems to me that the stated purpose is the reason for making the deed rather than a limitation that would make the transfer a mere easement.

In my judgment this reservation is insufficient to support plaintiff's claim.