**ROMALA CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 610–87C.**

United States Claims Court.

March 22, 1990.

---

11. *See supra* n. 8.

John M. Lisko, Waynesboro, Pa., attorney of record, for plaintiff. Maxwell, Maxwell, Dick, Walsh & Lisko, of counsel.

Mark H. Duesenberg, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director of Justice, and Thomas W. Peterson, Asst. Director, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. Plaintiff is seeking the cost of a replacement furnace. Defendant contends

that, under the terms of the lease, plaintiff is responsible for furnace replacement, and defendant may modify the heating system. In addition, defendant asserts that its modifications did not cause the furnace to fail.

*Factual Background*

This action arises out of a lease dated March 11, 1963, between plaintiff (lessor) and defendant (lessee), for rental of real property and a building in Smithburg, Maryland. The lease, drafted by defendant, was for a term of 10 years with four 5–year renewal options. Plaintiff provided heat pursuant to paragraph 6(a):

> Lessor shall furnish heating system of sufficient size and capacity to maintain uniform temperature of 70° F. in all areas based on the design [sic] temperature commonly in use in the locality.

Lessor's maintenance and repair responsibilities, which include the heating system, are described in paragraph 7:

> *The Lessor shall,* unless herein specified to the contrary *maintain* the demised premises, including the building and *any and all equipment,* fixtures, and appurtenances, whether severable or nonseverable, *furnished by the Lessor under this lease in good repair and tenantable condition,* except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times enter and inspect the same and make any necessary repairs thereto. [Emphasis added.]

Prior to entering into the lease with defendant, plaintiff installed a new furnace, which was approved for use in the premises by defendant. Nearly 20 years later, during 1981 and 1982, defendant, without the prior permission or consent of plaintiff, installed a stack vent damper (damper) on this furnace,[1] and a Honeywell 7–day thermostat (thermostat).[2] Later that year,

---

1. A stack vent damper is a thermostatically controlled, motorized device, installed in the flue between the furnace and chimney. Its purpose is to increase operating efficiency by retaining residual heat within the metal mass of the fur-

nace, thus preventing warm air from escaping through the chimney while the furnace is off.

2. This is an automatic switching device to start and stop the stack vent damper.

plaintiff replaced the firebox in the furnace because too much heat was built-up there as a result of the functioning of the damper.[3] Some time in 1983, the thermostat was rewired by plaintiff because it had been improperly installed.[4] Plaintiff billed defendant for the thermostat repair costs and defendant paid. Approximately 3 years later, in December, 1986, the furnace failed and plaintiff replaced it.

In a letter dated December 12, 1986, plaintiff notified defendant that since defendant had failed to obtain plaintiff's permission before attaching the damper and thermostat, "these changes eliminate the lessor from all maintenance responsibility."

On June 15, 1987, plaintiff filed a claim with the Contracting Officer (CO) alleging that the installation of the damper and the thermostat caused the furnace to fail. The CO's decision, dated July 27, 1987, denied plaintiff's claim. It was based in part on paragraph 9 of the lease:

> The Government shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased (provided such alterations, additions, structures or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government. Prior to expiration or termination of this lease the Government shall if required by the Lessor by notice in writing sixty days in advance of such expiration or termination, restore the premises to as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over

which the Government has no control, excepted. [Emphasis added.]

In addition, the CO noted that "[t]he furnace was a part of the original construction and as such if it was in need of replacement, it was just plain wornout."

On September 29, 1987, plaintiff filed a complaint in this court claiming that the attachment by defendant of the damper and thermostat "caused an overload on the existing warm air furnace at the Plaintiff's facility, and was the direct and proximate result of the furnace failure and replacement." Plaintiff further alleges that it had never given its permission to the defendant to attach the devices and that such prior permission was necessary for such devices because it "has a right to determine if proposed changes will cause damage or mechanical problems to originally installed equipment." Plaintiff seeks to recover $3,100.00 for the cost of replacing the furnace and $620.00 for the administrative expenses related to furnace replacement, plus interest and attorney's fees.

### A. Jurisdiction

Plaintiff alleges jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1982) (the CDA). Lease agreements are proper subjects for adjudication under the CDA. *Kelley v. United States*, 19 Cl.Ct. 155, 160 (1989). The court finds that the July 27, 1987, decision of the CO constitutes a final decision for purposes of the CDA. Therefore, jurisdiction is proper here under the CDA.

### B. Summary Judgment

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law the moving party is entitled to judgment. RUSCC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an

---

**3.** Defendant's Response To Plaintiff's Cross-motion For Summary Judgment And Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment p. 6. Plaintiff is not claiming the cost of the firebox in this proceeding.

**4.** *Id.*

absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

To grant summary judgment in the present case, the court must find, as a matter of law, the party responsible for furnace replacement under the lease. In addition, the court must address the factual issue of whether defendant's modifications caused the furnace failure in 1986.

The parties' positions are as follows:

Plaintiff argues that pursuant to paragraph 7 of the lease, defendant cannot make changes or modifications to mechanical equipment originally installed by plaintiff, such as the furnace, without the prior express consent or approval of plaintiff. In addition, plaintiff contends that it has a right to determine if proposed changes will cause damage or mechanical problems to the furnace, which is plaintiff's maintenance and upkeep responsibility. Plaintiff asserts that because defendant did not obtain plaintiff's prior express consent to modify the furnace, defendant took over the responsibility for maintenance of this item. Therefore, according to this view, defendant is obligated to plaintiff for the cost of furnace replacement.

Defendant responds that paragraph 9 permits the modifications at issue. In consequence, defendant submits that its actions did not obligate it to assume responsi-

bility for the furnace. Plaintiff argues that paragraph 9 is ambiguous and, if read properly, it would not allow these modifications. After disputing this interpretation, defendant's final contention is that even if it had breached the lease, plaintiff has failed to establish that installation of the damper and thermostat caused the furnace to overload and fail.

C. Discussion

The general rules for interpretation of leases are aptly stated in *Randallstown Plaza Associates v. United States*, 13 Cl.Ct. 703, 706 (1987):

> The court's first responsibility is to attempt to interpret the lease in an effort to determine what the parties agreed to in their bargain.... Of course, each party believes that its own interpretation of the lease is the only reasonable interpretation. The interpretation of a lease, however, as with any other contract, is a question of law to be decided by the court.

The court, in interpreting the lease, must analyze according to the "meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *Randallstown Plaza Associates*, 13 Cl.Ct. at 706 (citation omitted). If questions of ambiguity in lease language are claimed by the parties, these are resolved "[i]f the court finds that only one reasonable interpretation of the lease is possible...." *Id.*

(1) *Notice*

Plaintiff does not cite to any authority which dictates the requirement of notice.[5] Instead, plaintiff makes the naked assertion that between intelligent and experienced contractors, it is fair and reasonable that defendant's actions require notice. Plaintiff creates a distinction, not in the lease, between mechanical equipment such as the furnace, which cannot be altered by defendant pursuant to paragraph 9, versus non-mechanical equipment, such as "adding

---

**5.** There is not any lease provision that requires defendant to notify plaintiff if defendant exer-

cises its rights under paragraph 9.

standing counters, placement of signs or pictures or the addition of postal boxes at the leased premises", which may be altered. *See infra* p. 12. Plaintiff does not cite any authority that specifically illustrates or supports this distinction. The court need not address the merits of this distinction, because the question of whether defendant is liable under the lease does not turn upon the notice contentions of plaintiff, which the court finds to be unsubstantiated.

### (2) *Ambiguity*

Plaintiff asserts that paragraph 9, which defines defendant's right to make alterations and attach fixtures to the premises, does not allow defendant to modify mechanical equipment such as the furnace; however, it does allow defendant to make traditional types of alterations such as erecting signs or pictures or adding standing counters or postal boxes at the leased premises. In making this distinction between mechanical and non-mechanical equipment, plaintiff raises the issue: Whether defendant's alteration of the furnace was permitted pursuant to paragraph 9? It is not clear to plaintiff that the lease adequately addresses the category (mechanical or non-mechanical) to which the furnace belongs. Plaintiff claims that because this question exists, there is a latent ambiguity in the lease. Defendant asserts that the paragraph is unambiguous; the furnace can be modified by it. In the alternative, defendant argues that if the paragraph is ambiguous, then any ambiguity is patent and, consequently, "as plaintiff failed to seek clarification of this ambiguity prior to entering into the contract with defendant, it cannot recover for the cost of the replacement of the furnace."

■ In light of the entire lease, the court need not address questions of ambiguity under paragraph 9, because the duty of maintenance and replacement of the furnace here is provided under paragraphs 6(a) and 7. *See Randallstown Plaza Associates*, 13 Cl.Ct. at 706 ("Although the parties in this case disagree as to the meaning of the contract, when this court steps into the shoes of a reasonable and prudent businessperson aware of the situation, a plain reading of the contract as a whole seems to yield only one reasonable interpretation"). Paragraph 6(a) provides that plaintiff shall "furnish heating system of sufficient size and capacity." Plaintiff's duty to maintain the furnace is under paragraph 7, which states that all furnished equipment is to be maintained by plaintiff in good repair. Therefore, it was plaintiff's duty to install and maintain the heating system.[6] In consequence, it would be inconsistent with the lease as a whole, and with the parties performance, to find any such ambiguities in paragraph 9 as now claimed by the parties. *B.D. Click Co. v. United States*, 222 Ct.Cl. 290, 299, 614 F.2d 748 (1980) ("[T]he contract should be interpreted in a manner which gives meaning to all its parts and in such a fashion that the provisions do not conflict with each other, if this is reasonably possible").

The addition of the damper and thermostat by defendant indisputably interfered with the operation of the furnace. In doing so, defendant interfered with plaintiff's duty[7] to provide and maintain the furnace. For this reason, defendant breached the lease. *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 740, 572 F.2d 786 (1978) (neither party to a contract can do anything which would prevent, hinder, burden or delay performance of the contract by the other party).

### (3) *Causation*

■ Defendant can only be liable here if the addition of the damper and thermostat

---

**6.** This is also the conclusion under the facts. Defendant asked plaintiff in 1983 to service the thermostat. Also, plaintiff replaced the firebox. Finally, after the furnace failed in 1986, plaintiff replaced it.

**7.** *Greater Eastern Holding Co.*, 84–3 BCA ¶ 17636 (September 25, 1984), and *Russell & Associates–*

*Fresno Ltd. v. United States*, 219 Ct.Cl. 663 (1979), both cited by defendant, are distinguishable from the case at bar in this regard: There is not a provision in those cases that is analogous to paragraph 6(a). In other words, neither case has a lease provision which explicitly addresses the responsibilities at issue.

resulted in damages. The burden of proving that falls upon plaintiff. *Russell & Associates–Fresno Ltd. v. United States*, 219 Ct.Cl. 663, 664 (1979). Plaintiff must meet its essential burden of establishing the fundamental facts of liability, causation and resultant injury. *Russell & Associates–Fresno Ltd.*, 219 Ct.Cl. at 664–65; *cf. River Construction Corp. v. United States*, 159 Ct.Cl. 254 (1962); *cf. G.M. Shupe Inc. v. United States*, 5 Cl.Ct. 662, 686 n. 13 (1984). Thus, plaintiff is required to establish causation between the acts complained of (installation of the damper and thermostat) and the harm alleged (failure and resulting replacement of the furnace). To meet its burden, plaintiff must demonstrate that the replacement of the furnace was necessitated by reason of improper attachment of the damper or thermostat or, at the least, that the furnace failure was not due to normal wear or tear. *See Russell & Associates–Fresno Ltd.* at 664–65.

Plaintiff's position on causation is the bare assertion that "[t]he installation of the stack vent damper and Honeywell thermostat, two pieces of 1980's technology, upon Plaintiff's 1960's vintage existing warm air furnace, caused the furnace to fail in December, 1986." Plaintiff's evidence does not support this assertion and fails to show that these installations were the direct and proximate cause of the furnace failure in 1986.

In contrast, defendant submits the affidavit of Benjamin Greenberg, who asserts, as an expert, that a properly installed damper and thermostat can "neither cause a furnace to overload or fail, nor can the attachment of such equipment shorten the useful life of a furnace." The only way that the installation of those devices could have caused an overload or failure of a furnace, contends Greenberg, is by improper installation. However, Greenberg states, "if installed improperly, the devices would have caused a hastened failure of the furnace." The court notes that the furnace plaintiff replaced had been in use for at least 23 years, even though the average useful service life of a furnace, according to the evidence, is 18 years.[8] Also, it is worth noting that the furnace operated for approximately 4 years with these attachments.

In response, plaintiff makes mere general, unsupported denials; it does not effectively refute the factual assertions made in the affidavit. Instead, plaintiff paraphrases Greenberg: "The improper installation of the stack vent damper and thermostat could cause an overload or failure of the existing furnace." However, this is a generalization and, without any other evidence that would apply it to the case at bar, this does not advance plaintiff's argument. Even accepting that the replacement of the firebox and rewiring of the thermostat were causally related to these attachments, plaintiff still does not show how these events in 1982 and 1983 prove that the installation of the damper and the thermostat caused the failure of the furnace in 1986. Thus, it is evident from the undisputed facts before the court that the failure of the furnace is not due to the installation of the damper and thermostat by defendant, but instead due to aging and ordinary wear and tear. The court finds that plaintiff has failed to show *any* proof that the ultimate failure of the furnace in 1986 was a result of the defendant's installations.

To counter a motion for summary judgment, specific facts, and not mere assertions of counsel or conclusory statements, must be set forth to demonstrate that a genuine issue of material fact exists. *Pure*

---

**8.** Defendant's expert, Benjamin Greenberg, declares that the median useful service life of a furnace is 18 years. This is supported by the 1987 HVAC HANDBOOK OF OWNING AND OPERATING COSTS, pp. 49.6–49.7. *See* Defendant's Response To Plaintiff's Cross-motion For Summary Judgment And Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment p. 4. Greenberg concludes "that the useful life of the furnace had expired by the time it was replaced." In contrast, plaintiff does not submit any evidence other that the unsubstantiated assertion that "[a] properly maintained furnace can last for thirty years or more and Plaintiff had a regular maintenance program on furnaces in order to get the maximum amount of use from the equipment." Plaintiff's Proposed Findings Of Uncontroverted Fact p. 4.

**14**

*Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626–27 (Fed.Cir.1984). The court finds that plaintiff has failed to set forth evidence to establish that material facts are in dispute.

### Conclusion

On the strength of its legal and factual assertions as stated above, defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied. Accordingly, the Clerk is directed to dismiss plaintiff's complaint. No costs.