**COGGESHALL DEVELOPMENT CORP. and Coggeshall Marina, Inc., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 90–3942L.**

United States Claims Court.

Aug. 22, 1991.

James M. Sloan, III, Providence, R.I., attorney of record for plaintiffs. Christine J. Engustian and Gardner, Sawyer, Gates, Sloan & Engustian, of counsel.

Andrew M. Eschen, Washington, D.C., with whom was Asst. Atty. Gen. Richard B. Stewart, for defendant.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiffs are successors-in-title to Navy surplus property, and seek compensation from defendant for the alleged violation of the terms of the original deed. Defendant asserts that plaintiffs lack standing to bring an action against the government. In the alternative, defendant maintains that plaintiffs essentially request declaratory relief over which this court has no jurisdiction. For the reasons stated below, defendant's motion to dismiss is denied.

### Factual Background

On February 13, 1978, the General Services Administration (GSA) conveyed 28.8 acres of land in Portsmouth, Rhode Island, to the Rhode Island Port Authority and Economic Development Corporation (RIPA).[1] The land was surplused by the

---

1. Pursuant to the Federal Property and Adminis-    trative Services Act, 40 App.U.S.C. § 484, the

United States Navy and included a small marina known as Bend Boat Basin. The sewer lines connecting the Bend Boat Basin area to the Newport Sewer plant pass through adjacent property owned by the Navy.

The GSA deed to RIPA stated in part:

The Grantor hereby grants to Grantee all sewer lines located within said Parcels 1 and 2, along with the *perpetual and assignable right to connect at the boundary of Grantee's property with certain sewer mains owned by Grantor and located on other land of Grantor.* Grantor covenants that it will maintain its sewer mains and appurtenances which connect sewer lines in the fee area to the City of Newport's public sewer system. [Emphasis added.]

In addition, the deed provided the following with respect to successors-in-title and subsequent assignment by RIPA:

Wherever in this Deed reference is made to the Grantor or Grantee, the same shall be read and construed so as to include the successors in title and assigns of both Grantor and Grantee, as well as any person, firm or entity claiming by, through or under said Grantor or Grantee, and their respective successors in title and assigns.

*All covenants and agreements as are herein contained in this Deed, whether made by Grantor or Grantee, shall be deemed and shall constitute covenants running with the land, and shall be binding upon the successors in title and assigns of both Grantor and Grantee,* and those claiming by, through or under either of them, including with-out limiting the foregoing generality, estates for a term of years except that the covenants and agreements of the Grantor shall cease to run with the land if the same shall have lapsed as aforesaid. [Emphasis added.]

On December 30, 1986, RIPA transferred 20.3 acres of the surplus property to plaintiffs under two separate deeds.[2] RIPA deeded plaintiffs "all those rights and easements appertaining thereto granted to Grantor [RIPA] by the [GSA] deed." In addition, the Coggeshall Marina deed contained the following restriction:

This conveyance is made subject to the covenant and restriction that the premises conveyed shall be used for commercial/industrial purposes only (excluding all parking areas) until January 1, 2007 and the further covenant and agreement that a marina (boat slips, docks and ancillary uses) of a size comparable to the size of the present marina shall be retained as a use, the owner using best efforts to maintain marina job rolls and job functions, which covenants and agreements shall be deemed to be covenants running with the land for the benefit of the Grantor and the owners of other lands described in the USA Deed....

Plaintiffs sought to construct residential condominiums in the Bend Boat Basin property. They requested the Portsmouth Planning Board to zone a portion of the property for residential use.[3] The Planning Board invited the Navy to comment on the proposal.[4] The Navy informed the Planning Board that it imposed a 12,000 gallon per day limitation on sewage dis-

---

Rhode Island Port Authority and Economic Development Corporation (RIPA) purchased the property from GSA for development purposes.

**2.** RIPA transferred 8.5 acres of property to plaintiff Coggeshall Marina, Inc. and 11.8 acres to plaintiff Coggeshall Development Corp. RIPA also conveyed 8.5 acres to Tillotson–Pearson, who granted Coggeshall Development Corp. an option in the property.

**3.** Plaintiffs requested that the 11.8 parcel of property be zoned for residential development. This parcel contained no covenants on develop-ment or zoning restrictions. Under the RIPA deed, the 8.5 acre parcel could be used only for commercial and industrial purposes until January 1, 2007. Consequently, plaintiffs never sought to zone this parcel for residential purposes.

**4.** The Planning Board was not authorized to approve zoning requests. Rather, the Board compiled information on the request and reported to the Portsmouth Town Council. Under Rhode Island law, the Town Council could not permit residential development without adequate sewer disposal facilities.

charge from the Bend Boat Basin area, and that "[s]ewage and water for the proposed subdivision cannot be obtained through Navy utilities." GSA subsequently adopted the Navy's position. Plaintiffs thereupon requested the Navy and GSA to reconsider this decision and to allow 72,000 gallons per day of sewage discharge. Their request for reconsideration was denied by William F. Burke, Director of the Department of Public Works of the Naval Education and Training Center, James A. Peterson, Special Assistant to the GSA Regional Administrator, Boston region, and William Diamond, GSA Regional Director, New York region. Consequently, plaintiffs' zoning request was neither acted upon nor approved.

Plaintiffs brought suit in the United States District Court for the District of Rhode Island seeking injunctive relief "to permit [Coggeshall] the perpetual and assignable right to connect at the boundary of the property owned by the [Navy] such sewer connections and sewer mains as are necessary for the use and enjoyment of [Coggeshall's] property." The district court granted judgment in favor Coggeshall and "order[ed] that the Navy take [Coggeshall's] future needs into account in its upcoming study of the sewer system's needs and that the Navy within a reasonable time make repairs as required to allow [Coggeshall] to tie into the sewer system for up to the requested total amount of 72,000 gallons of discharge per day." On appeal, the United States Court of Appeals for the First Circuit determined that plaintiffs advanced "an action for breach of contract, irrespective of how it is packaged." The court, therefore, concluded that the Claims Court, not the district court, was the proper forum to litigate the claim. Consequently, the First Circuit vacated the district court decision and dismissed the action for lack of subject matter jurisdiction.

Plaintiffs instituted suit in this court, seeking $25 million in damages against the government for the alleged breach of the deed covenant. Defendant filed a motion to dismiss the action, contending that plaintiffs essentially request the court to interpret the provisions of the deed and determine the obligations of the parties. As such, defendant maintains that plaintiffs seek equitable relief not available in the Claims Court. In addition, defendant asserts that any claim for damages is premature since the Town of Portsmouth had not zoned plaintiffs' property for the proposed development. Defendant also avers that plaintiffs lack standing to sue the government for breach of the deed covenant. As successors-in-title to the property, plaintiffs claim privity of contract with defendant, enabling them to maintain an action against the United States for breach of a covenant running with the land. In addition, plaintiffs deny that they seek injunctive or declaratory relief from this court. Rather, plaintiffs maintain entitlement to money damages presently due for a breach of contract affecting the development and marketability of their properties.[5]

## Discussion

■ Plaintiffs label their action as breach of contract claim rather than a "taking" claim. This court may entertain claims predicated upon an express or implied-in-fact contract with the United States. 28 U.S.C. § 1491(a). Absent privity of contract, plaintiffs may not advance their claim against the government. *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed.Cir.1983).

Defendant deeded the property in question to RIPA with the "perpetual and assignable right to connect the boundary of grantee's property with certain sewer mains owned by grantor and located on the other land of grantor." RIPA's right to connect with the sewer mains and the government's obligation to maintain those sewers "touch and concern" the subject property and are, therefore, covenants

5. Plaintiffs filed a "Motion for Summary Judgment as to Liability" on February 23, 1991. The court instructed the parties to brief the issue of standing during a status conference held on March 27, 1991. Consequently, the court suspended the filing of a response by the government until resolution of all jurisdictional issues.

which run with the land. *See Friends of Sakonnet v. Dutra,* 749 F.Supp. 381, 390 (D.R.I.1990). The deed provides that "[a]ll covenants and agreements as are herein contained in this Deed ... shall be deemed and shall constitute covenants running with the land, and shall be binding on the successors in title and assigns of both Grantor and Grantee." The deed, therefore, determined the rights and obligations of the parties and their successors concerning the land in question.

The RIPA deed to plaintiffs grants "all those rights and easements appertaining thereto granted to Grantor [RIPA] by the [government] deed." Plaintiffs are successors-in-title to the property RIPA purchased from the United States. As successors to RIPA, plaintiffs inherit the rights and obligations set forth in the original deed between defendant and RIPA. As such, plaintiffs have a contractual relationship with the United States, and may maintain a breach of contract action against defendant for violation of their rights under the deed.

In *Deterding v. United States,* 107 Ct.Cl. 656, 69 F.Supp. 214 (1947), a landowner sued the United States under a deed which conveyed an easement over her property for the widening of a neighboring river. Plaintiff was the successor-in-interest to the grantor of the deed. Defendant acquired the easement from the grantee and sold oil and gas interests in the property in contravention of its limited rights under the deed. Plaintiff sought compensation in the Court of Claims, asserting that defendant breached the terms of the deed. Defendant moved to dismiss the case for lack of jurisdiction. The court denied the motion, stating:

> We think that the relation between the plaintiff and the United States, in relation to their respective rights in the land in question, is a conventional or contractual relation, within the meaning of our jurisdictional statute. [Citation omitted.] The deed from plaintiff's predecessor to the predecessor of the United States was

a determination and statement of what rights the parties and their successors were to have in this land. When the United States took the Anderson title, it took it, not by acquisition in some overriding capacity as sovereign, but as successor to Anderson, and subject to his obligations, as they were stated in the deed. His obligations became those of the United States, because it was the intent of the parties, and is the rule of law that successors shall be bound.

*Id.* at 661, 69 F.Supp. at 216. In accord with *Deterding,* the court concludes that plaintiffs have standing to pursue their contract claim in this court.

## II.

■ The court must next determine whether plaintiffs state a claim upon which relief can be granted. In reviewing a motion to dismiss under RUSCC 12(b)(4), the court "assume[s] as well-pled factual allegations are true and indulge[s] in all reasonable inferences in favor of the nonmovant." *Gould v. United States,* 935 F.2d 1271, 1273 (Fed.Cir.1991). Furthermore, all that is required to withstand a motion to dismiss is "a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gould,* 935 F.2d at 1275, *citing Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

■ The jurisdiction of the Claims Court is commensurate with the United States' waiver of immunity from suit. It is well established that any waiver of sovereign immunity must be expressed unequivocally. *Fidelity Constr. Co. v. United States,* 700 F.2d 1379 (Fed.Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1984). Historically, the court has only entertained claims seeking money damages. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Consequently, this court cannot grant declaratory or injunctive relief absent an express statutory authorization.[6] There is no statutory au-

---

**6.** For example, Congress amended the Tucker Act to authorize the court to grant declaratory

relief in pre-award bid protest controversies.

thority for the court to render a declaratory judgment in the present case. Plaintiffs must, therefore, advance a monetary claim in order to invoke the jurisdiction of the court.

 Plaintiffs purchased the property from RIPA to construct residential condominiums. The Town of Portsmouth refused to zone the property for residential development after defendant set a 12,000 gallon per day sewer discharge limit for the Bend Boat basin area. Plaintiffs assert that defendant breached the deed in refusing to accommodate additional effluent discharge. Plaintiffs do not request the court to order defendant to upgrade and maintain the sewer line passing through its property to handle the additional effluent.[7] Furthermore, they do not merely request an interpretation of the language of the deed. Rather, plaintiffs seek money damages for loss of development of their property. Plaintiffs assert that these damages represent the "natural and probable consequences" of the government breach, namely, the loss in marketability of the property due to limits on sewage capacity.[8] *Romala Corp. v. United States,* 20 Cl.Ct. 8, 12–13 (1990); *see also H.H.O. v. United States,* 7 Cl.Ct. 703, 707 (1985). In *San Carlos Irr. and Drainage Dist. v. United States,* 877 F.2d 957 (Fed.Cir.1989), the Federal Circuit concluded that the plaintiff-appellant stated a claim for which relief could be granted where it alleged government breach of contract in the operation and maintenance of dam and electrical generation facilities and asserted that damages occurred as a result of the breach. Under the standard applica-

---

*See* 28 U.S.C. § 1491(a)(3); *Blount, Inc. v. United States,* 22 Cl.Ct. 221, 226 (1990).

7. Indeed, the court recognizes that neither the Claims Court nor federal district courts may order specific performance by the United States of alleged contract obligations. *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *Aktiebolaget Bofors v. United States,* 139 Ct.Cl. 642, 153 F.Supp. 397 (1957).

8. Defendant maintains that the case is not ripe for review because the property in question is not zoned for residential purposes. However, if plaintiffs can establish that defendant breached the deed covenant, and that the breach caused a

ble to a motion to dismiss, the court concludes that plaintiffs have adequately pled a money oriented claim for breach of contract within the meaning of the Tucker Act, 28 U.S.C. § 1491.

### Conclusion

For the foregoing reasons, the court denies defendant's motion to dismiss. Defendant is directed to file its response to plaintiffs' motion for summary judgment by October 4, 1991. No costs.

---

diminution in value of their property, they would presumably be entitled to money damages against the government. *Russell & Assoc.-Fresno Ltd. v. United States,* 618 F.2d 120, 219 Ct.Cl. 663, 664 (1979). Read in the light most favorable to plaintiffs, there is a causal relationship between defendant's refusal to accommodate 72,000 gallons of sewage per day and the failure of the Portsmouth Town Council to approve plaintiffs' zoning request. For purposes of the instant motion, plaintiffs have set forth sufficient allegations which, if proven, support a viable breach of contract action against defendant.