The FLATHEAD JOINT BOARD OF CONTROL OF the FLATHEAD, MISSION AND JOCKO VALLEY IRRIGATION DISTRICTS, the Flathead Irrigation District, the Mission Irrigation District and the Jocko Valley Irrigation District, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–567 L.

United States Court of Federal Claims.

Dec. 22, 1993.

Jon Metropoulos, Helena, MT, for plaintiff.

Edward J. Passarelli, Washington, DC, with whom was Asst. Atty. Gen. Myles E. Flint, for defendant; Janice Schnieder, Dept. of the Interior, of counsel.

## ORDER UPON RECONSIDERATION

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss.[1] Plaintiffs sought award of damages based upon defendant's alleged breach of statutory, contractual and constitutional obligations relating to the Flat-

---

1. On November 12, 1993 the court issued its original Order on defendant's motion to dismiss per RCFC 12(b)(1) and 12(b)(4). Thereafter plaintiff timely filed a motion for reconsideration. Upon review of the motion for reconsideration the court believed it proper to reconsider the Order of November 12 and in accordance with RCFC 83.2(f) the court requested, by order, a response to the motion for reconsideration from defendant. On December 9, 1993 the court vacated the original order. Upon advice that defendant did not, in the circumstances, believe a response was necessary the court proceeded to reconsider the original order and herewith issues its Order Upon Reconsideration.

head Federal Irrigation and Power Project. Defendant challenged plaintiffs' complaint based on lack of subject matter jurisdiction or, in the alternative, failure to state a claim for which relief may be granted. Oral argument is deemed unnecessary.

## Facts

### A. The Flathead Project.

The Flathead project is an irrigation and power distribution project in Northwestern Montana operated by of the Bureau of Indian Affairs (BIA). The project has two divisions: the irrigation division and the power division. The BIA has operated the irrigation division since 1910 and the power division since 1930. The irrigation division serves approximately 127,000 acres; about 10% of the Flathead Indian Reservation. The power division serves approximately 23,000 people; nearly the entire populated area of the 1,245,000 acre Flathead Reservation and a small area beyond the Reservation. Plaintiff irrigation districts are subdivisions of the state of Montana. The Flathead Joint Board of Control, is an incorporated political subdivision formed by the three state-chartered irrigation districts under the statutes of Montana.

### B. History Of The Flathead Project.

#### 1. Creation of the Irrigation and Power Projects (1904–1909).

At the turn of the century, Congress passed the Flathead Allotment Act. Act of Apr. 23, 1904, ch. 1495, 33 Stat. 302. The Act provided for allotment of the Reservation lands to all members of the tribes, and the opening of the remaining lands to non-Indian settlement. The Act also provided for the construction of irrigation ditches for the benefit of the Indians. § 14, 33 Stat. at 305. In 1908 Congress authorized irrigation of both Indian lands and lands sold to non-Indians. Act of Apr. 30, 1908, ch. 153, 35 Stat. 70, 83–84. A month later, Congress amended the 1904 Act to require payment for the construction and operating costs of the irrigation system to be made through assessments to non-Indian land purchasers. Act of May 29, 1908, ch. 216, sec. 15, § 9, 35 Stat. 444, 449–50. This amendment also contained a "turnover" provision, which is the basis of plaintiffs' complaint:

> When the payments required by this Act have been made for the major part of the unallotted lands irrigable under any system and subject to charges for construction thereof, the management and operation of such irrigation works shall pass to the owners of the lands irrigated thereby, to be maintained at their expense under such form of organization and under such rules and regulations as may be acceptable to the Secretary of the Interior.

Sec. 15, § 9, 35 Stat. at 450. In 1909, Congress further amended the 1904 Act to authorize the Secretary of the Interior to reserve power and reservoir sites on the Reservation. Act of Mar. 3, 1909, ch. 263, § 22, 35 Stat. 781, 796.

#### 2. Formation of the Irrigation Districts and Execution of the Original Repayment Contracts (1926–1934).

In 1926, Congress appropriated $575,000 for continuing construction of the power system and for construction and maintenance of the irrigation system. Act of May 10, 1926, ch. 277, 44 Stat. 453, 464–65. Congress, as a condition precedent to expenditure of the new appropriation, required plaintiffs to execute repayment contracts for the previously unpaid costs for construction and operation and maintenance of the irrigation and power projects. The repayment contracts were to be executed by irrigation districts organized under state law and which were to embrace all irrigable lands except Indian trust lands.[2] 44 Stat. at 465. The irrigation districts executed repayment contracts implementing the provisions of the 1926 Act between 1928 and 1934.

#### 3. Restructuring the Project Debt (1948–1950).

As of 1948, the project users had not paid for the construction of the project. To assure repayment and to accommodate the in-

---

2. See also Act of Jan. 12, 1927, ch. 27, 44 Stat. 934, 945 (containing appropriations subject to

conditions similar to the 1926 Act).

creasing demand for electric power service, Congress enacted the Act of May 25, 1948, ch. 340, 62 Stat. 269. Subsection 2(e) of the 1948 Act created a repayment schedule to repay all the then-existing construction debt over a 50 year period, beginning in January 1950. § 2(e), 62 Stat. at 270. Congress also provided that any new construction costs should be repaid by either increasing the annual assessments, extending the repayment schedule up to 50 years after the new costs are incurred, or both. § 2(f), 62 Stat. at 270. The Act further provided that the annual installments initially be paid from net power revenues from the power division, and then, if not liquidated through the application of net power revenues, by an assessment against lands chargeable with the construction costs.[3] § 2(i)-(j), 62 Stat. at 271. In order to derive the benefits of the repayment adjustments provided by the 1948 Act, Congress required the irrigation districts to execute amendatory repayment contracts within two years. § 3, 62 Stat. at 271–72. Each of the districts executed amendments to the original repayment contracts between 1950 and 1951.

### C. Tribal Participation in Operation and Management of the Power Division.

On October 21, 1986 the tribes entered into a contract to operate and manage the BIA Flathead Agency Power Division pursuant to the Indian Self–Determination and Education Assistance Act of 1975, § 2, 25 U.S.C. § 450 (1988 & Supp. IV 1992).[4] This Act directs that, upon application by an Indian tribe, a government agency shall contract with the tribe for the operation and management of programs for the benefit of Indians unless the agency determines the tribe will not be able to perform satisfactorily. 25 U.S.C. § 450f(a)(2). Pursuant to the Act, the terms of this contract include specific provisions designed to ensure that the tribes operate and maintain the power division in accordance with applicable federal laws and regulations. See, e.g., 25 U.S.C. § 450m; Contract between the Bureau of Indian Affairs

and the Confederated Salish and Kootenai Tribes (October 1, 1991). The contract does not disturb BIA's retention of title to all works and rights of the power division: The power division remains a Federal facility.

On August 18, 1992, plaintiffs filed a complaint alleging that, under the 1908 Act, they were entitled to operation of both the irrigation and power divisions and that defendant's failure to turn over those operations was a breach of statutory (four counts) and contractual (seven counts) obligations. Plaintiffs further alleged that defendant's failure to turn over the operation and maintenance of the irrigation and power divisions, and defendant's contract with the tribes to operate the power division, constituted a temporary taking for which they were entitled to just compensation under the Fifth Amendment to the Constitution. Defendant responded by filing this motion requesting that the court dismiss plaintiffs' complaint for lack of subject matter jurisdiction under RCFC 12(b)(1) or, in the alternative, for failure to state a claim upon which relief can be granted under RCFC 12(b)(4).

### Discussion

When considering a motion to dismiss, "whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, unchallenged allegations of the complaint should be construed favorably to the pleader." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). Ordinarily, the facts alleged in the complaint are deemed to be true for the limited purposes of the motion. *Cupey Bajo Nursing Home, Inc. v. United States*, 23 Cl.Ct. 406, 411 (1991) (citing *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988)). However, when facts relevant to the issue of *subject matter* jurisdiction are challenged, the court is required to decide those facts. *Blaze Constr., Inc. v. United States*, 27 Fed.Cl. 646, 650 (1993) (citing *Reynolds*, 846 F.2d at 747). While the court is ordinarily limited to the

---

3. To date, the districts have not been assessed for any construction or maintenance and operation costs.

4. The contract was renewed on October 1, 1991 for an indefinite term.

pleadings in deciding RCFC 12(b) motions, *Cupey Bajo,* 23 Cl.Ct. 406, 411 when facts relevant to the issue of subject matter jurisdiction are disputed, the court may consider evidence outside the pleadings to resolve those disputed facts. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (citing *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947)). The non-moving party bears the burden of establishing the court's jurisdiction. *Reynolds,* 846 F.2d at 748.

 The parties' briefs indicated some confusion as to the proper use of a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1) and a motion to dismiss for failure to state a claim under RCFC 12(b)(4). In their response to defendant's motion to dismiss, plaintiffs contended that it was not appropriate for defendant to argue the merits of plaintiffs' complaint in its motion. While plaintiffs' contention ordinarily would be true if defendant's motion was solely a motion to dismiss for lack of subject matter jurisdiction under rule 12(b)(1), *Indium Corp. of America v. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986), defendant argued for dismissal under either 12(b)(1) or, in the alternative, 12(b)(4) on *each* count of plaintiffs' complaint.[5] A motion to dismiss for failure to state a claim under rule 12(b)(4) is an adjudication on the merits. *L.E. Cooke Corp. v. United States,* 27 Fed.Cl. 753, 755 (1993); *Brahms v. United States,* 18 Cl.Ct. 471, 473 (1989); *Hedman v. United States,* 15 Cl.Ct. 304, 306 (1988). As a result, it was proper for defendant to argue the merits of each of plaintiffs' claims in its motion to dismiss. Of course, the court may not consider defendant's arguments on the merits of any of plaintiffs' claims until it has first ruled that it has jurisdiction over that claim. *Brahms,* 18 Cl.Ct. at 473. Accordingly, the court will not address defendant's rule 12(b)(4) motion on any claim unless it first finds it has subject matter jurisdiction over that claim.

In their complaint, plaintiffs alleged that the government breached various contractual (counts I–VII) and statutory (counts VIII–XI) duties. Plaintiffs also alleged a constitutional claim under the Fifth Amendment (count XII): a temporary taking of plaintiffs' right to operate and manage the project without just compensation. For simplicity, the court will address the statutory and constitutional claims before addressing the contractual claims.

## A. Statutory Claims (counts VIII–XI)

Plaintiffs alleged that defendant violated its statutory duties by: (1) failing to turn over operation and management of the irrigation and power projects to the districts as allegedly required by the 1908 Act (count VIII); (2) failing to negotiate with the districts about the turnover of operation and management of the projects as allegedly required by the 1908 Act (count IX); (3) improperly incurring, as reimbursable construction costs, amounts which were neither approved by the districts nor used for construction of the project and which, when added to the reimbursable costs for which the districts are liable, exceeded the limitations set out by the 1948 Act (count X); and (4) improperly allocating net revenues from the power division in violation of the 1948 Act (count XI).

 Plaintiffs alleged that because these claims are based upon Acts of Congress this court has jurisdiction over these claims under the Tucker Act. The Tucker Act reads in pertinent part: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress ..., or upon any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1) (Supp. IV 1992). However, plaintiffs' mere allegation that these claims spring from statute does not confer Tucker Act jurisdiction upon this court. The United States Court of Federal

---

5. It was apparent from plaintiffs' response to defendant's motion to dismiss that it was not clear to them that defendant's motion was for dismissal under either rule 12(b)(1) or, in the alternative, rule 12(b)(4) on *each* of plaintiffs'

claims. Plaintiffs requested and the court granted additional briefing to address each claim under both rule 12(b)(1) and rule 12(b)(4) in early June of 1993. However, plaintiffs' failed to file further briefs.

Claims may exercise its Tucker Act jurisdiction for statutory or constitutional claims only when there is an independent source of substantive law which "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967). In other words, plaintiffs must show that the Acts of 1908 and 1948 provide a substantive right to money damages to establish the court's jurisdiction on these claims. Although the right to money damages need not be explicitly stated, the obligation for money damages must be clear and strong. *Inupiat Community of Arctic Slope v. United States*, 230 Ct.Cl. 647, 680 F.2d 122, 130 *cert. denied*, 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982).

▮ Neither the Act of 1908 nor the Act of 1948 expressly mandate monetary damages. Further, nothing in either act implies that Congress intended to consent to a damages remedy. Both the 1908 and the 1948 Acts provide the districts with prospective protection, rather than retroactive monetary damages. The 1908 Act provides for the operation and management of the irrigation works to pass to the owners of the lands irrigated thereby when the payments as outlined by the Act have been made. *See* Act of May 29, 1908, ch. 216, sec. 15, § 9, 35 Stat. 444, 449–50. The 1948 Act specifically outlines the requirements for distribution and reimbursement of the construction and maintenance costs of the irrigation and power divisions. *See* Act of May 25, 1948, ch. 340, 62 Stat. at 269–73. Nothing in the text of these statutes implies enforcement by money damages. The logical inference to be drawn is that Congress intended these statutes to be enforced according to their terms. Accordingly, plaintiffs' proper remedy under both Acts is declaratory or injunctive relief rather than monetary damages. This court does not have jurisdiction to order declaratory or injunctive relief on statutorily based

claims in these circumstances. *United States v. King*, 395 U.S. 1, 2–5, 89 S.Ct. 1501, 1501–03, 23 L.Ed.2d 52 (1969); *Coggeshall Dev. Corp. v. United States*, 23 Cl.Ct. 739, 743–44 (1991). As a result, the court does not have RCFC 12(b)(1) subject matter jurisdiction to hear counts VIII through XI of plaintiffs' complaint.

*B. Constitutional Claim (count XII)*

▮ In their final count, plaintiffs alleged a temporary taking of the districts' property, specifically a contractual "property" right to operate and manage the irrigation and power divisions, based upon defendant's refusal to transfer these functions to the districts, and upon defendant's contract with the tribes for the operation and management of the power division. The Court of Federal Claims has jurisdiction over claims brought under the takings clause of the Fifth Amendment. *Narramore v. United States*, 960 F.2d 1048, 1051–52 (Fed.Cir.1992). However, for plaintiffs to state a claim for which relief may be granted under the takings clause of the Fifth Amendment, plaintiffs must allege a compensable property interest. *See Bowen v. Public Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 55–56, 106 S.Ct. 2390, 2398, 91 L.Ed.2d 35 (1986); *Preseault v. United States*, 27 Fed. Cl. 69, 84 (1992).

▮ In their "takings" claim, plaintiffs alleged a contractual right to turnover of the management and operation of both the irrigation and power divisions of the project. There is no basis for plaintiffs' argument in any of the contracts they signed. The contractual relationship between plaintiffs and the defendant is based on original and amendatory repayment contracts. While these contracts were made in pursuance of the 1904 Act, none of these contracts established an express or implied duty to transfer the management and operation of the project to the plaintiffs.[6] Rather, they merely imple-

---

6. Even if the court were to conclude, as plaintiffs' suggested, that the statutory requirement for turnover was a part of the contracts, plaintiffs have not yet met the condition precedent to turnover and thus have not alleged a compensable property interest. The turnover provision of the

1908 Act was subject to a condition precedent: that payments required by the Act be made for a major part of the lands irrigated thereby. The statutes upon which the repayment and amendatory repayment contracts were based, and the contracts themselves, restructured the repayment

mented the governing statutes upon which Congress conditioned the availability of money appropriated for continued construction of the project on the repayment of past and future construction costs and the repayment of past and future operation and maintenance costs. "[T]he Government will be held to have obligated itself in contract only upon a showing of an express or implied-in-fact agreement to do so." *Nutt v. United States*, 12 Cl.Ct. 345, 351 (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed.Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

Plaintiffs also contended that a paragraph in the original repayment contracts implied a contractual right to turnover of the management and operation of the project. The paragraph reads: "Unless and until he shall in the future turn over the management thereof, the Secretary of the Interior shall have control and management of [the] project and all the works and rights thereof." *See, e.g.*, Flathead Irrigation Project Contract with Flathead Irrigation District, para. 5 (November 24, 1928). This statement does not either expressly or impliedly obligate defendant to turnover the project. Rather, it merely indicates who shall have control and management of the project under the contracts. Accordingly, the court finds that plaintiffs do not have a contractual right to turnover of the operation and maintenance of either division of the project. As a result, plaintiffs have not alleged a compensable property interest and their constitutional claim must fail for failure to state a claim upon which relief may be granted.

## C. Contractual Claims (counts I–VII)

 Because the court finds that it does not have jurisdiction to hear plaintiffs' statutory claims and because plaintiffs' constitutional claim does not state a claim for which relief can be granted, any right plaintiff might have to receive money damages must come from the original and amendatory repayment contracts they signed. The Court of Federal Claims' jurisdiction over contract

claims is well established. *United States v. Mitchell*, 463 U.S. 206, 215, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). The only question is whether the facts alleged in plaintiffs' complaint constitute any actionable claims under those contracts. As a result, plaintiffs' claims will be considered under RCFC 12(b)(4). Contract interpretation is a matter of law and may be decided properly on a motion to dismiss. *See P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984).

Plaintiffs alleged that defendant breached its contracts with the districts by: (1) failing to transfer the operation and management of the irrigation and power projects to them (count I); (2) failing to deal fairly and in good faith with them by allowing the interests of third parties (i.e., the tribes) to take precedence over and to prevent the performance of contractual obligations (count II); (3) unreasonably refusing to enter into negotiations with the districts to accomplish the transfer (count III); (4) refusing to fully inform the districts as to defendant's view of the proper time for and conditions of the transfer (count IV); (5) improperly incurring, as reimbursable construction costs, amounts which were neither approved by the districts nor used for construction of project works and which, when added to the reimbursable costs for which the districts are liable, exceeded the limitations set out by the contracts (count V); (6) failing to operate and maintain the project properly, including the water storage and conveyance facilities, resulting in excessive annual losses of water (count VI); and (7) assigning its rights and duties for the operation of the power division to the tribes (count VII).

 In order to recover for breach of contract plaintiffs must establish: (1) a valid contract with defendant; (2) an obligation or duty arising out of that contract; (3) a breach of that duty; and (4) damages caused by that breach. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d

schedule in the 1908 Act such that full payment will not be made for any of the lands covered by the Act until at least the year 2000. *See, e.g.*, Act of May 25, 1948, ch. 340, § 2(e)–(f), 62 Stat. 269,

270; Amendatory Repayment Contract: Flathead Irrigation Project, Flathead Irrigation District, para. 2, § 2(e), & para. 6, § 12(c) (April 4, 1950).

957, 959 (Fed.Cir.1989). The court found in in the previous section that plaintiffs do not have a contractual right to turnover of the operation and maintenance of either division of the project. As a result, count I of plaintiffs' complaint, failure to transfer the operation and management of the irrigation and power projects to them, must be dismissed for failure to state a claim for which relief can be granted. Additionally, because defendant does not have a contractual duty to turn over the operation and management of the project, it follows that defendant does not have a contractual obligation to enter into negotiations to accomplish that transfer or to inform the districts as to its view of the proper time and conditions of such transfer.[7] As a result, counts III and IV must also be dismissed for failure to state a claim upon which relief can be granted.

■ Plaintiffs also alleged that defendant failed to deal fairly with them by allowing the claims and interests of strangers to the contracts to interfere with defendant's contract obligations. The contracts set out specific obligations and duties for defendant. While it is unclear from plaintiffs' complaint which contract obligations have been interfered with, if plaintiffs can prove that defendant has allowed the interests of any third party to interfere with its contract obligations and that plaintiffs have been damaged thereby, plaintiffs have stated a claim for which relief can be granted. As a result, defendant's motion to dismiss count II is denied.

■ In count V of plaintiffs' complaint, plaintiffs alleged that defendant improperly incurred reimbursable construction costs in contravention of the contracts. The original and amendatory repayment contracts define plaintiffs' and defendant's rights and duties as to the incurrence of construction costs. However, it is unclear from the record whether defendant improperly incurred reimbursable construction costs and, if so, whether plaintiffs were damaged by such breach. Whether defendant breached its duties under the contract and damaged plaintiffs thereby are issues fact which can not be determined from the record. As a result, the court may not grant defendant's motion to dismiss count V.

■ Count VI of plaintiffs' complaint alleged that defendant failed to operate and maintain the water storage and conveyance facilities properly, resulting in excessive annual losses of water which damaged plaintiffs. The contracts specifically give defendant the duty to control and manage the project works. Defendant does not deny that it retains that duty. Whether defendant failed to properly operate and maintain the project works and whether plaintiffs were damaged thereby are issues of fact which can not be determined from the record. Accordingly, defendant's motion to dismiss count VI is denied.

In their final contractual complaint, plaintiffs argued that defendant breached a contractual duty by assigning its rights and duties for the operation of the power division to the tribes. However, the contracts specifically allow for the transfer of the rights and duties of management of the project. *See, e.g.,* Flathead Irrigation Project Contract with Flathead Irrigation District, para. 5 (November 24, 1928). It is apparent from plaintiffs' complaint that their concern is not so much that the rights and duties of management were transferred, but that they were transferred to the tribes in contravention of plaintiffs' alleged contractual right to operate and manage both the irrigation and power divisions of the project.[8] As discussed above, plaintiffs do not have a contractual right to the operation and management of either division of the project. As a result, plaintiffs can not properly claim that defendant assigned those rights and duties in contravention of any contractual right. Accordingly, count VII of plaintiffs' complaint is dismissed for failure to state a claim upon which relief can be granted.

7. While plaintiffs may be entitled to an accounting under the contracts, this court is not the proper forum for such an action.

8. It should be noted here that the 1908 Act does not require turnover of the operation and management of the power division of the project to plaintiffs. However, because the court finds that plaintiffs do not have a contractual right to turnover of either division of the project, the court need not address this issue.

### Conclusion

For the reasons stated above, the court grants in part and denies in part defendant's motion to dismiss. Accordingly, counts VIII–XI are dismissed under rule 12(b)(1) for lack of subject matter jurisdiction, without prejudice. Counts I, III, IV, VII and XII are dismissed under rule 12(b)(4) for failure to state a claim upon which relief may be granted, with prejudice. The parties are directed to file a joint status report within thirty (30) days advising the court as to how, or if, at this time, they desire to proceed on counts II, V and VI.

**IT IS SO ORDERED.**